**In re Stephan Jay LAWRENCE, Debtor.**

**Stephan Jay Lawrence, Appellant,**

v.

**Chapter 7 Trustee, Appellee.**

**Nos. 99–2764–CIV–GOLD/SIM, 99–2768–CIV–GOLD/SIM.**

United States District Court, S.D. Florida.

July 31, 2000.

Ronald Geroge Neiwirth, Miami, FL, for Appellant.

Paul Steven Singerman, Miami, FL, for Appellee.

## ORDER AFFIRMING BANKRUPTCY COURT'S AUGUST 26, 1999 TURN OVER ORDER, SEPTEMBER 8, 1999 CONTEMPT ORDER, AND OCTOBER 5, 1999 INCARCERATION ORDER

GOLD, District Judge.

THIS CAUSE is before the court in Case No. 99–2764–CIV–GOLD upon appeal of the *Order Granting Trustee's Motion to Compel Debtor to Turn Over Trust Res and to Fully Disclose all Trust Transactions and Order to Show Cause Notice Pursuant to Fed.R.Bankr.P. 9020(b)* (the "Turn Over Order"), entered August 26, 1999, by the Honorable Thomas S. Utschig, United States Bankruptcy Court Judge. The appellant has argued that the Turn Over Order was inappropriately entered and should be reversed. Jurisdiction of this court is invoked pursuant to 28 U.S.C. § 158(a). Also pending before this court in Case No. 99–2678–CIV–GOLD is the appellant's appeal of the Bankruptcy Court's September 8, 1999 *Order Adjudicating Debtor in Civil Contempt for Violation of the August 26, 1999 Order Granting Trustee's Motion to Compel Debtor to Turn Over Trust Res and to Fully Disclose all Trust Transactions and Order to Show Cause Pursuant to Fed.R.Bankr.P. 9020(b)* (the "Contempt Order") and October 5, 1999 *Order Directing United States Marshal to Incarcerate Debtor for Failure to Turn Over Property of the Bankruptcy Estate Pursuant to Prior Court Orders* (the "Incarceration Order").

A hearing was held before this court on January 14, 2000, at which the parties chose not to present additional evidence or testimony and to base their appeal and arguments on the underlying record. Pursuant to the court's instructions, the parties submitted additional memoranda after the hearing. After careful review of the record in this appeal, the transcripts of the hearings before the Bankruptcy Court designated in the record on appeal, the parties' briefs, the Orders entered by the Bankruptcy Court, and the relevant law, this court finds that the Bankruptcy Court's August 26, 1999 *Order Granting Trustee's Motion to Compel Debtor to Turn Over Trust Res and to Fully Disclose all Trust Transactions and Order to Show Cause Notice Pursuant to Fed. R.Bankr.P. 9020(b)* should be affirmed. Furthermore, this court has gone on to affirm both the Contempt and Incarceration Orders that were subsequently entered by the Bankruptcy Court.

## I. Factual and Procedural Background

This matter revolves around an offshore trust settled by the appellant on or about January 8, 1991, two months prior to the conclusion of a 42 month arbitration dispute with Bear, Stearns & Co., Inc. ("Bear, Stearns") that resulted in a $20.4 million award in favor of Bear, Stearns. *See Pompano–Windy City Partners, Ltd., et al. v. Bear, Stearns & Co., et al.*, No. 87–Civil–7159, S.D.N.Y., Corrected Final Judgment entered April 7, 1993, confirming arbitration award of March 15, 1991. The appellant settled the offshore trust, titled the Lawrence Family 1991 Inter Vivos Trust (the "Trust"), in the Jersey Channel Islands with an initial *res* of approximately $7 million. *See* The Declaration of Trust, Ex. A to Complaint Objecting to Debtor's Discharge; Dep. of Stephan J. Lawrence, Sept. 5, 1996, p. 72. The Trust was amended on or about February 7, 1991, adding specific spendthrift language and moving the proper law of the Trust to the Republic of Mauritius. *See* The Declaration of Trust. There were two subsequent amendments made to the Trust by the Trustee. On January 23, 1993, the Trust was amended so that the Settlor's powers could not be executed under duress or coercion and so that the life inter-

est of the Settlor would terminate in the event the Settlor became bankrupt. In March 1995, an amendment was added to the Trust declaring the appellant to be an "Excluded Person." *See id.*[1]

In June 1993, Bear, Stearns registered in the Southern District of Florida the $20.4 million judgment which it had obtained in the Southern District of New York against the appellant. *See Pompano–Windy City Partners, Ltd., et al. v. Bear, Stearns & Co., Inc., et al.*, No. 93–6489–CIV–KING (the "Bear, Stearns Lawsuit"). The Trust, through its then-trustee, Kapil Dev Joory, was impled into the Bear, Stearns Lawsuit in November, 1996. *See* 93–6489–CIV–KING, D.E. # 126, 179. On August 28, 1998, Judge King stayed any further attempts to transfer the assets of the Trust pending further action by the bankruptcy court. *See id.,* D.E. # 205.

Meanwhile, on June 12, 1997, the appellant filed a Voluntary Petition under Chapter 7, Title 11, United States Code, for bankruptcy discharge in the U.S. Bankruptcy Court, Southern District of Florida.

*See In re Stephan Jay Lawrence,* No. 97–14687–BKC–AJC. Alan J. Goldberg, the bankruptcy trustee, filed a Complaint Objecting to Debtor's Discharge on or about April 13, 1998. *See Goldberg v. Lawrence,* 227 B.R. 907 (Bkrtcy.S.D.Fla.1998). The Trust was not joined as a party in Goldberg's action.

During the course of that proceeding, a discovery dispute arose between the appellant and the appellee over the sufficiency of appellant's answers to interrogatories. The appellee, Goldberg, moved to compel better answers. In response, the bankruptcy court conducted a three-day evidentiary hearing in order to obtain responsive answers from the appellant. *See* 7/21–23/98, Tr.; *In re Lawrence,* 227 B.R. 907 (Bankr.S.D.Fla.1998). The bankruptcy court made extensive factual and legal findings, and issued an opinion on September 23, 1998, concluding that 1) there were numerous factual inconsistencies in the appellant's testimony, 2) the appellant lacked credibility,[2] 3) the appellant purposely avoided his obligation to cooperate with

1. "Asset protection planning" has become more problematic in recent years. As noted in a recent law review article [which discussed the Lawrence case], "Stephan Lawrence's efforts to avoid his creditors—euphemistically called 'asset protection planning' by its practitioners—have become increasingly common in recent years. Although determining with any precision the value of assets that debtors have transferred offshore to avoid creditor claims is nearly impossible, conservative estimates exceed one trillion dollars. One lawyer, prominent in the asset protection business, represents that his firm alone has clients with more than three billion dollars in asset protection trusts." Stewart E. Sterk, *Asset Protections Trusts: Trust Law's Race to the Bottom?* 85 Cornell L.Rev. 1035, 1036 (2000) (footnotes omitted). *See also* Randall J. Gingiss, *Putting a Stop to "Asset Protection" Trusts,* 51 Baylor L.Rev. 987 (1999).

2. Judge Utschig conducted a three day hearing during which he had a unique opportunity to observe the Appellant, who was the sole witness. *Lawrence,* 227 B.R. at 910. In his findings of fact, he concluded on a number of occasions that Lawrence's testimony lacked credibility. Likewise, he cited prior orders

issued by Chief Judge Cristol who found the testimony of both Lawrence and his counsel to be not credible and not believable. *Id.* at 910 n. 7. He concluded that: "The Debtor's substantial lack of veracity in his voluntary bankruptcy case is amply demonstrated. He continued his lack of truthfulness throughout the hearings which are the subject of this Order." *Id.* Of most significance, Judge Utschig found it "... impossible to believe the Debtor's testimony that he simply walked away from virtually all of his assets without any sort of struggle." *Id.* at 912. He further stated: "This Court finds it impossible to believe that the Debtor surrendered ninety percent (90%) of his assets to a stranger on the other side of the world without maintaining some control over the assets." *Id.*

As noted in *Federal Trade Commission v. Affordable Media,* 179 F.3d 1228, 1231 (9th Cir.1999), "An old adage warns that a fool and his money are easily parted. This case shows that the same is not true of a district court judge and his common sense." The same adage and conclusion equally applies to both Judge Utschig's analysis as well as to Judge Cristol's subsequent comments in *In re Lawrence,* 238 B.R. 498, 500 (Bankr.S.D.Fla. 1999).

the Trustee, 4) appellant's willful and bad-faith failure to obey discovery orders make striking of the insufficient response appropriate, 5) the facts alleged in the Trustee's complaint are therefore deemed established, 6) the appellant's rights and obligations under the Trust are governed by Florida and federal bankruptcy law, and not the law of Mauritius, and 7) the trust corpus is property of the estate under 11 U.S.C. § 541. *See In re Lawrence,* 227 B.R. 907 (Bankr.S.D.Fla.1998). The appellant filed a notice of appeal but failed to timely designate a record and otherwise perfect his appeal. The bankruptcy court entered an order dismissing the appeal and denied a motion for reconsideration. The appellant subsequently appealed that denial to the district court, and the district court affirmed. A subsequent appeal to the Eleventh Circuit was voluntarily abandoned by the appellant. *See* 8/26/99 Turn Over Order Tr. at 29–30.

In July 1999, the appellee filed a motion seeking to order the appellant to turn over the assets of the Trust. Following oral argument before the Honorable Thomas Utschig on August 26, 1999, the bankruptcy court ordered the appellant to turn over the assets of the Trust, account for its transactions, and surrender his passport (the "Turn Over Order").[3] Appellant filed an appeal of the Turn Over Order, which is currently pending before the court.

Subsequent to the Turn Over Order, the bankruptcy court held a hearing on September 2, 1999,[4] after which Chief Bank-

---

**3.** In his Turn Over Order, Judge Utschig stated that he "reviewed the voluminous pleadings which have been filed by the parties in this Court and in the United States District Court, including the *Debtor's Motion to Continue Hearing ...,* the *Trustee's Response to Debtor's Motion to Continue Hearing ...,* and the *Debtor's Response to the Trustee's Motion to Compel, With Supporting Memorandum of Law ...,* the record before the Court in this case and in the adversary proceedings previously commenced by the Trustee against the Debtor ..., the Court's prior ruling in this case and in the adversary proceedings...." This record included the three days of hearing before Judge Utschig which commenced on July 21, 1998 and culminated in his findings and conclusions in *In re Lawrence,* 227 B.R. 907 (Bankr.S.D.Fla.1998). At the Turn Over hearing, Lawrence did not appear, notwithstanding efforts by the Trustee to produce the Debtor through cooperation of counsel and with a subpoena on eight separate occasions. In his oral findings of fact, Judge Utschig concluded: (1) the Turn Over proceeding was not an adversary proceeding under Rule 7001; (2) the Trust Corpus was part of the estate created at the commencement of the case under Section 541(a)(1) of the Bankruptcy Code; (3) the Debtor has a duty under Section 521(4) of the Bankruptcy Code to surrender to the Trustee all property of the estate; (4)(5) the key holdings in *In re Lawrence,* 227 B.R. 907, including that the Trust Corpus is property of the estate under 11 U.S.C. § 541 and that the Debtor's rights and obligations are governed by Florida and Federal Bankruptcy Law, are not dicta; (5) Lawrence's trust arrangement is a "farce,"

designed to obfuscate and hide assets, and (6) Lawrence tried to hide even the existence of the trust, and his prior testimony was replete with perjury. 8/26/99 Turn Over Order Tr. He codified his findings in a written order, dated August 26, 1999, which ordered the Debtor to turn over to the Bankruptcy Trustee the entire *res* of the Mauritian Trust, and to provide a full and complete accounting of all transactions in respect to the alleged Mauritian Trust. He stated: "[T]his Court has previously held that the *res* of the so-called Lawrence Family 1001 Intervivos Trust (the 'Mauritian Trust') is property of the bankruptcy estate. *See In re Lawrence,* 227 B.R. 907, 917–918 (Bankr.D.Wyo.1998). The Debtor remains under a continuing obligation to turn over all property of the estate. This Court concurs with the holding in *In re Crabtree,* 39 B.R. 702, 710 (Bankr.E.D.Tenn.1984) that the provisions of 11 U.S.C. § 521 constitute the 'functional equivalent of a specific and definite order of the court.' This Debtor has been under the actual knowledge of the Court's holding that the *res* of the alleged Mauritian Trust was property of the estate since at least July 23, 1998." Turn Over Order at 2.

**4.** At the September 2, 1999 hearing, the Debtor testified and admitted that he neither turned over the Trust *res* nor provided an accounting as required by the Turn Over Order. [T.R. 5, at 28; C.P. # 684]. The Debtor further testified that he did not know whether he could compel the trustee(s) of the Trust to do anything, but that whatever rights and powers he had were set forth in the Trust Indenture, which was offered into evidence

ruptcy Judge A. Jay Cristol issued an opinion on September 8, 1999 (the "Contempt Order"), holding the appellant in civil contempt for violating the court's previous Turn Over Order and fining the appellant $10,000 per day until he purged his contempt. *In re Lawrence*, 238 B.R. 498 (Bankr.S.D.Fla.1999).[5] On or about September 16, 1999, the appellant filed a timely objection pursuant to Fed.R.Bankr.P. 9020 to the bankruptcy court's Contempt Order. In addition, the bankruptcy court held two further status conferences to monitor compliance with the August 26, 1999 Turn Over Order. At the second, on October 5, 1999, the bankruptcy court found that the appellant's alleged attempts to comply with the Turn Over Order were entirely unacceptable and ordered the appellant incarcerated by the U.S. Marshal until such time as he complies with the order requiring him to turn over the Trust *res* (the "Incarceration Order").

An emergency motion to vacate the bankruptcy court's October 5, 1999 Incarceration Order was brought before this court, and oral arguments on the appeal of the Contempt Order and Incarceration Order were heard on November 12, 1999. The court issued an Interim Order on November 19, 1999, deferring a final ruling until the completion of the Turn Over Order appeal. *See* 99–2678–CIV–GOLD, D.E. 31.

## II. Standard of Review

 This court denied appellant's motion to consolidate the appeal of the Turn Over Order with the appeal of the Contempt Order because of the different standards of review involved in the two appeals and the likelihood that consolidation would lead to unnecessary confusion of the issues. *See* 99–2678–CIV–GOLD, D.E. 26. Generally, review of the bankruptcy court's Contempt Order is *de novo* for all findings of fact or conclusions of law, whereas review of the Turn Over Order, which is currently before the court, is clearly erroneous for findings of fact and *de novo* for conclusions of law.[6]

once again at the September 2, 1999 hearing. [T.R. 5, at 28–29; C.P. # 684]. At the conclusion of the hearing, the Bankruptcy Judge again found that the Debtor had control over the Trust through, *inter alia,* his retained power to remove and appoint trustees and to add and exclude beneficiaries. [T.R. 4, at 48–49; C.P. # 684]. The Bankruptcy Judge found that the Debtor had the present ability to cause the turn over and provide an accounting as required by the Turn Over Order. The Bankruptcy Judge's finding was based on the Debtor's testimony and the specific terms of the Trust which provided that the Debtor, as settlor, had the absolute right to remove and appoint trustees and to control beneficiaries.

5. After considering the entire record, Judge Cristol concurred with the previous findings of Judge Utschig that the Debtor was not credible. He concluded without doubt that the Debtor retains the requisite power to cause the return of trust rest to the United States in compliance with the Turn Over Order. He stated: "The foregoing is based, in part, on Paragraph 12 of the Trust Indenture which purportedly established the Alleged Trust specifically reserves to the Settlor, the Debtor, the right to change the Trustee(s) of the Alleged Trust. Thus, the Court does not

believe the Debtor's conclusory denials that he cannot undo what he did and that he is powerless to repatriate the trust res to the Chapter 7 estate and that compliance with the Turn Over Order is impossible." *In re Lawrence,* 238 B.R. at 500. He further explained, "[T]his Court's finding in respect to the Debtor's power and ability to cause compliance with the Turn Over Order is not limited to paragraph 12 of the Indenture of the Alleged Trust, or to any other provision of the Alleged Trust. Indeed, this Court's finding is based as well on the entirety of the record before the Court in this case and in the Adversary proceeding, and the Court's own common sense: it defies reason—it tortures reason—to accept and believe that this Debtor transferred over $7,000,000 in 1991, an amount then constituting over ninety percent of his liquid net worth, to a trust in a far away placed administered by a stranger—pursuant to an Alleged Trust which purports to allow the trustee of the Alleged Trust total discretion over the administration and distribution of the trust res. The Court declines to abandon common sense and to torture reason in the manner urged by the Debtor." *Id.*

6. For a more detailed discussion of the standard of review for contempt orders see the court's November 19, 1999 Interim Order.

■ The bankruptcy court's Turn Over Order is a final order within the meaning of 28 U.S.C. § 158(a)(1). As such, the appeal is governed by Fed.R.Bankr.P. 8001–8019, which dictates procedures for district court or bankruptcy appellate panel review of a final judgment, order, or decree of a bankruptcy judge. Rule 8013 states that: "Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses." Fed.R.Bankr.P. 8013. A finding of fact is clearly erroneous when, after reviewing the evidence, a court is left with the definite and firm conviction that a mistake was made. *See In re Arnold and Baker Farms,* 177 B.R. 648 (9th Cir. BAP 1994). A bankruptcy court's conclusions of law are reviewed *de novo. See In re William Schneider, Inc.,* 175 B.R. 769 (S.D.Fla. 1994).

## III. Discussion

### A. Turn Over Standard

■ The Supreme Court stated the principles underlying turn over and contempt proceedings in bankruptcy court and set forth the applicable burdens and required standard of proof to sustain a turn over order in *Maggio v. Zeitz,* 333 U.S. 56, 68 S.Ct. 401, 92 L.Ed. 476 (1948). The issuance of a turn over order by the bankruptcy court "is appropriate only when the evidence satisfactorily establishes the existence of the property or its proceeds, and possession thereof by the defendant at the time of the proceeding." *Maggio,* 333 U.S. at 63–64, 68 S.Ct. at 405.

■ As noted by the Supreme Court in *Maggio,* the burden of proof is of critical importance in a turn over proceeding. The trustee must support the motion for a turn over order by clear and convincing evidence,[7] and that includes proof that the property has been abstracted from the bankrupt estate and is in the possession of the party proceeded against. *Id.,* 333 U.S. at 64, 68 S.Ct. at 405. Mere proof that the property was in possession or control of the accused party at some prior time is insufficient to justify turn over, unless the time element and other factors make that a fair and reasonable inference. *Id.,* 333 U.S. at 65, 68 S.Ct. at 406. It is important for the court to consider the whole record and to exercise reason and sound judgment, "mindful that the order should issue only as a responsible and final adjudication of possession and ability to deliver, not as a questionable experiment in coercion which will recoil to the discredit of the judicial process if time proves the adjudication to have been improvident and requires the courts to abandon its enforcement." *Id.,* 333 U.S. at 67, 68 S.Ct. at 407.

Although the *Maggio* Court was analyzing contempt and turn over proceedings under the old Bankruptcy Act, 11 U.S.C. § 11, repealed in 1979, which did not expressly create a turn over procedure, their rationale for requiring present possession to support a turn over order is still relevant, since failure to comply can be enforced, as in this case, by contempt proceedings. *See Maggio,* 333 U.S. at 62–64, 68 S.Ct. at 405; *In re U.S.A. Diversified Prod., Inc.,* 193 B.R. 868, 876–77 (Bankr. N.D.Ind.1995).

**7.** A growing minority of cases have concluded that the older pre-Code Supreme Court cases have been superseded by the Bankruptcy Code and are no longer consistent with more recent Supreme Court pronouncements on the appropriate burden of proof in other types of bankruptcy proceedings. See discussion in *In re Alofs Manufacturing Company,* 209 B.R. 83, 89–91 (Bankr.W.D.Mich.1997) (applying the preponderance of the evidence standard instead of the clear and convincing evidence standard in a turnover proceeding). Appellee in this case did not contest the *Maggio* clear and convincing standard until footnote 1 in its Supplemental Brief. As the appellant fails to prevail even under the more stringent clear and convincing standard, it is not necessary at this time for the court to determine whether the minority preponderance of the evidence standard should be applied.

**640**

In analyzing the burden of proof in a Chapter 7 turn over proceeding against involuntary Chapter 7 debtors, the Eighth Circuit noted that burden shifting is appropriate. *See Evans v. Robbins,* 897 F.2d 966, 968 (8th Cir.1990). "The burden of proof in a turnover proceeding is at all times on the receiver or trustee; he must at least establish a prima facie case. After that, the burden of explaining or going forward shifts to the other party, but the ultimate burden or risk of persuasion is upon the receiver or trustee." *Id.* (quoting *Gorenz v. Illinois Dept. of Agriculture,* 653 F.2d 1179, 1184 (7th Cir.1981) (further cites omitted)). Although the amount of evidence necessary to satisfy the trustee's burden will vary on a case by case basis, the trustee must prove its case by clear and convincing evidence. *Evans,* 897 F.2d at 968.

### B. Property of the Estate

The appellant has attacked the Turn Over by arguing that, in finding that the Trust *res* is property of the bankruptcy estate, the Bankruptcy Judge incorrectly relied on the bankruptcy court's prior holding in *In re Lawrence,* 227 B.R. 907 (Bankr.S.D.Fla.1998) (the "Discovery Sanction Order"). According to the appellant, the findings of the Discovery Sanction Order constituted dicta and are not binding on later decisions of the bankruptcy court. After a thorough review of the bankruptcy proceedings and the applicable law, this court respectfully disagrees.

As noted in the factual and procedural background, *supra,* the bankruptcy court's Discovery Sanction Order was based on three days of testimony by the appellant brought about by the trustee's motion to compel answers to interrogatories in 98–1211–BKC–AJC–A, an adversary proceeding initiated by Trustee's Complaint Objecting to Debtor's Discharge under 11 U.S.C. § 727. Default was entered due to the direct actions of the Debtor, who, in the opinion of the bankruptcy court below, sought to "undermine not only the discovery process but also the integrity of the judicial system and the Bankruptcy Code." *In re Lawrence,* 227 B.R. 907, 910 (Bankr. S.D.Fla.1998). Default final judgment is an appropriate sanction when a party wilfully and in bad faith abuses the litigation process. *See National Hockey League v. Metropolitan Hockey Club,* 427 U.S. 639, 642–43, 96 S.Ct. 2778, 2781, 49 L.Ed.2d 747 (1976); *American Motorists Ins. Co. v. Beaver,* 1994 WL 597612 at *3 (E.D.Pa. 1994) ("[I]t is well-settled that the Court is permitted, under appropriate circumstances, to exercise its discretion to control its docket by imposing the ultimate sanction of dismissal or default for a party's failure to comply with discovery orders or to otherwise unjustifiably delay disposition of the action.") (citing *Link v. Wabash Railroad,* 370 U.S. 626, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962)); *United States v. Wilfley,* 1997 WL 759581 at *5 (D.Or.1997) (granting motion for default judgment based on party's ongoing and repeated noncompliance with court orders concerning pre-trial discovery and preparation of pre-trial order). It is significant in this case that the default was not entered solely on the papers filed, but after eleven hours of hearings where the Bankruptcy Judge had a first-hand opportunity to consider the candor and demeanor of the appellant. The Bankruptcy Judge found Lawrence's testimony to be "disingenuous and untruthful," and his actions to be part of an "unrelenting campaign to conceal crucial information." *Id.* at 910–11. The decision was thorough and well reasoned. Based on Lawrence's default, it was held that "the facts alleged in the Trustee's Complaint, including without limitation those alleged in Count I of the Complaint regarding the Debtor's interest in the Mauritian Trust and his continuing concealment thereof, are deemed to be established." *Id.* at 917. The bankruptcy court went on to find that the debtor's rights and obligations under the Trust are governed by Florida and federal bankruptcy law, and that the trust corpus is property

of the estate under 11 U.S.C. § 541.[8] *Id.* It then stated that a final default judgment against the appellant would be entered under Counts I through XVIII of the Trustee's Complaint Objecting to Debtor's Discharge. *Id.* at 918. The Default Judgment is now a final, nonappealable order.[9]

The appellant argues that the holding in the Discovery Sanction Order regarding the Trust as property of the bankruptcy estate is *dicta* because it was not necessary to the holding in that case. This interpretation fails to take into account the specific allegations of the Complaint and the import of the bankruptcy court's holding that final default judgment should be entered against the appellant under all the counts, including Count I, the trustee's objection to discharge for continuing concealment of property of the estate.[10] Count I had specifically alleged that Lawrence maintained a continuous, concealed managerial and beneficial interest in the Trust, as it must in order to state a valid claim for denial of discharge. *See Thompson v. Eck*, 149 F.2d 631, 633 (2d Cir.1945) ("[T]he bankrupt must have some legal interest in the property before he can be charged with its concealment.") The

bankruptcy court's finding that the Trust was property of the estate was thus a necessary component of the denial of discharge under Count I, and was not *dicta.* As such, it became the law of the case, and should continue to govern the issue of whether the Trust corpus is property of the estate under 11 U.S.C. § 541. The essence of the appellant's arguments at this juncture are impermissible collateral attacks on the validity of the judgment which should not be heard or validated. *See, e.g., Maggio v. Zeitz*, 333 U.S. 56, 68, 68 S.Ct. 401, 407, 92 L.Ed. 476 (1948) (holding that the final order in a turnover proceeding becomes res judicata and not subject to collateral attack in a later contempt proceeding).

Furthermore, the bankruptcy court had good reason at the time of the Discovery Sanction Order to conclude that the trust corpus was property of the estate when the Debtor declared bankruptcy, independent of the default finding.[11] Despite the March 22, 1995 amendment to the Trust purporting to declare the appellant an "Excluded Person," it does not appear that the declaration was irrevoca-

---

**8.** 11 U.S.C. § 541 defines Property of the Estate as:

> (a) The commencement of a case under section 301 of this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:
>
> (1) Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case.

**9.** The appellant failed to timely file a designation of the record on appeal as required by Fed.R.Bankr.P. 8006 and Local Rule 806(A), resulting in the issuance of an Order Dismissing Bankruptcy Appeal by the bankruptcy court on October 28, 1998. The district court affirmed the dismissal order on January 25, 1999. The appellant initially sought further review of the district court's order in the Eleventh Circuit but elected to voluntarily dismiss his appeal with prejudice.

**10.** 11 U.S.C. § 727(a)(2) denies discharge if the debtor concealed (A) property of the debt-

or, within one year before the date of the filing of the petition; or (B) property of the estate, after the date of the filing of the petition. Although Count I of the Complaint Objecting to Debtor's Discharge is labeled 11 U.S.C. § 727(a)(2)(A), it is also entitled "Continuing concealment of property of the estate," and it is evident from reading it that it is intended to refer to 11 U.S.C. § 727(a)(2)(B).

**11.** The United States Supreme Court has given a very expansive interpretation to the meaning of property of the estate. *See United States v. Whiting Pools, Inc.*, 462 U.S. 198, 204–05, 103 S.Ct. 2309, 2313–14, 76 L.Ed.2d 515 (1983). Property of the estate is generally defined by state law. *See Butner v. United States*, 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979). Once the nature and extent of the debtor's interest is determined under state law, federal bankruptcy law dictates to what extent that interest is property of the estate. *Bavely v. United States (In re Terwilliger's Catering Plus, Inc.)*, 911 F.2d 1168, 1172 (6th Cir.1990).

ble.[12] *See In re Lawrence,* 227 B.R. at 912 n. 12. The Bankruptcy Court correctly surmised that the Trust language would permit the Mauritian trustee to amend the trust at his or her discretion to deem Lawrence to be a beneficiary once again, and that Lawrence retained the power as settlor to change the trustee.[13] *Id.* The Bankruptcy Court went on to cite and discuss *In re Portnoy,* 201 B.R. 685 (Bankr.S.D.N.Y.1996), *In re Brooks,* 217 B.R. 98 (Bankr.D.Conn.1998), and *In re Cameron,* 223 B.R. 20 (Bankr.S.D.Fla. 1998) in support of its finding. *In re Lawrence,* 227 B.R. at 917–18. The Court specifically restated the holding in *In re Brooks* for the proposition "that certain assets placed in an offshore trust [are] nevertheless assets of the bankruptcy estate and subject to the Court's jurisdiction," and for the idea that the court should "refuse[ ] to allow the laws of the foreign jurisdiction to control because these laws [are] repugnant to ... public policy." *Id.* at 917 n. 17. This analysis, and the decisions cited by the Bankruptcy Court, support the finding that the Trust is governed by Florida and federal bankruptcy law. Florida and federal bankruptcy law both prohibit individuals from setting up self-settled spendthrift type trusts and maintaining the benefits of and ability to significantly control same, while keeping the assets away from creditors. *See In re Cattafi,* 237 B.R. 853, 856 (Bkrtcy.M.D.Fla. 1999) ("The general rule is that when one has an interest in property which he may alien or assign, that interest, whether legal or equitable, is liable for the payment of his debts.") (citing *Croom v. Ocala Plumbing & Electric Co.,* 62 Fla. 460, 465, 57 So. 243, 244 (1911)). Indeed, when a person creates a discretionary trust for his own benefit, as Lawrence did in this case, "his creditors can reach the maximum amount which the trustee under the terms of the trust could pay to him or apply for his benefit, even though the trustee in the exercise of his discretion wishes to pay nothing to the beneficiary or to his creditors, and even though the beneficiary could not compel the trustee to pay him anything." *In re Cameron,* 223 B.R. at 25. The Bankruptcy Court was therefore justified and correct in concluding that the Trust was property of the estate, given the ability of the trustee to summarily revoke Lawrence's excluded status and appoint the whole of the trust and its income to Lawrence, and Lawrence's ability to dismiss the trustee and appoint another. The Debtor's managerial control over the Trust on the Petition Date, arising from, among other things, his ability to remove and replace trustees and to add or exclude beneficiaries, constitutes a legal or equitable interest in property, sufficient to bring such property within the scope of property of the estate.

■ Once the bankruptcy court deemed the Trust property of the estate, the appellant came under an obligation to turn over the Trust *res* and any recorded information related to it to the trustee. *See* 11 U.S.C. § 521(4) ("The debtor shall ... surrender to the trustee all property of the estate and any recorded information, including books, documents, records, and papers, relating to the property of the estate, whether or not immunity is granted under section 344 of this title."). This obligation was in effect at the time of the turn over hearing.

*Windy City Partners, Ltd. v. Bear, Stearns & Co.,* No. 93–6489–CIV–KING.

12. The fact that the trustees of the Lawrence Family Trust are aware of the distinction between a revocable and an irrevocable exclusion of a beneficiary is demonstrated by the June 16, 1999 amendment seeking to make the appellant's exclusion irrevocable, even though that amendment is void as being in violation of 11 U.S.C. § 362(a)(3) and the stay order entered by Judge King in *Pompano–*

13. Paragraph 12 of the Deed of Appointment grants the Settlor, the appellant, the right to remove and appoint Trustees at his discretion. This power does not appear to be affected by the 1995 Declaration making Lawrence an excluded person.

## C. Present Ability to Comply

In order for the Turn Over Order to be valid, the evidence before the Bankruptcy Court must have clearly and convincingly shown not only that the Trust corpus was in the possession or under the control of the appellant at the time of bankruptcy, but also that the appellant had the ability at the time of the Turn Over Order to comply by turning over the Trust *res.* *See Maggio,* 333 U.S. at 65, 68 S.Ct. at 406 ("[T]urnover orders should not be issued, or approved on appeal, merely on proof that at some past time property was in possession or control of the accused party, unless the time element and other factors make that a fair and reasonable inference."). The Bankruptcy Court found implicitly in the August 26, 1999 Turn Over Order, and explicitly in the September 8, 1999 Contempt Order, that "the Debtor retains the requisite power to cause the return of the trust *res* to the United States in compliance with the Turn Over Order." *In re Lawrence,* 238 B.R. 498, 500 (Bankr.S.D.Fla.1999).

The primary support for the finding that the appellant had the present ability to comply with the Turn Over Order is found in the Trust Indenture itself. The Trust Indenture establishes that the appellant had the power and the authority to exercise substantial control over the Trust at the time of the Turn Over Order.[14]

The Bankruptcy Court noted in the September 8, 1999 Contempt Order that Paragraph 12[15] of the Deed of Appointment specifically reserves to the Settlor (Lawrence) the right to change the Trustee(s) of the Trust. *See In re Lawrence,* 238 B.R. at 500. This power is not affected by the subsequent Declaration that Lawrence is an Excluded Person. Furthermore, there was no specification in the March 1995 Declaration whether the exclusion of Lawrence was revocable or irrevocable. The overall tenor and intent of the Trust Indenture is clearly to grant nearly unfettered discretion and authority in the Trustees. Accordingly, the Trustees can exercise the powers granted to them "as they shall think most expedient for the benefit of all or any of the persons actually or prospectively interested under this Settlement and may exercise (or refrain from exercising) any power or discretion for the benefit of any one or more of them without being obliged to consider the interests of others or other." January 8, 1991 Declaration of Trust, Clause 20(a). The discretion of the Trustees is absolute and uncontrolled and they have complete control over how they exercise their power. *Id.,* Clause 20(b). The import of these clauses and provisions, when read together, is that the appellant, as settlor and prospective beneficiary, retained *de facto control over* the Trust through his ability to appoint Trustees who could in their absolute discretion reinstate the appellant as a beneficiary and assign the entire proceeds to him.

The appellant has highlighted a number of Trust provisions which he believes demonstrate that he does not have, and did not have at the time of the Turn Over Order, the power to effect a turn over of the Trust corpus. These include Clause 16 of

---

**14.** For purposes of this analysis, the Trust Indenture consists of the January 8, 1991 Declaration of Trust; the February 7, 1991 Deed of Appointment; the January 21, 1993 Supplemental Deed; May 10, 1993 Supplement Deed; March 22, 1995 Declaration; and June 16, 1999 Declaration of Intent.

**15.** Paragraph 12 states:

*Power of Removal and Appointment of Trustees*
(a) The Settlor may in his absolute discretion by deed at any time or times during the Trust Period remove all or any of the Trustees here-of and appoint one or more other persons or companies to be a Trustee or Trustees hereof in place of the Trustee or Trustees so removed.
(b) The Settlor may in his absolute discretion by deed at any time or times during the Trust period appoint new and additional Trustees hereof and Schedule 4 of the Settlement [Retirement and Appointment of New and Additional Trustees] shall be amended by the insertion after the words "existing Trustees" of the words "and in the Settlor."

the January 21, 1993 Supplemental Deed, the March 22, 1995 Declaration excluding Lawrence as a beneficiary, and the June 16, 1999 Declaration of Clarification of Intent. However, an analysis of these provisions reveals that they do not diminish the appellant's power to control distribution of the trust property into his own hands.

Clause 16 of the January 21, 1993 Supplemental Deed, entitled Exercise of Settlor's Powers and Discretions, states that "The powers and discretions hereby conferred upon the Settlor shall not be exercisable by him if in any purported exercise thereof he is in any way subject to duress or coercion of any kind (whether such duress or coercion arises from a process of law for the benefit of his creditors or otherwise) and any purported exercise of his powers or discretions which appears to have been made under such duress or coercion shall be of no force or effect and neither the Trustees nor any other person shall give any cognisance thereto." The January 21, 1993 Supplemental Deed also inserts a Clause 17 into the Trust Indenture for the purpose of terminating the life interest of the Settlor in the event of bankruptcy or some other legal process for the benefit of creditors. These anti-duress provisions are attempting to establish the Lawrence Family Trust as a spendthrift trust.

Florida law recognizes and enforces spendthrift clauses and trusts. *In re Lichstrahl*, 750 F.2d 1488, 1490 (11th Cir.1985); *Fehlhaber v. Fehlhaber*, 850 F.2d 1453, 1455 (11th Cir.1988). However, as noted in *Fehlhaber*, "if a settlor creates a trust for his own benefit and inserts a spendthrift clause, the spendthrift clause is void as far as then existing or future creditors are concerned, as they can reach his interests under the trust." *Fehlhaber*, 850 F.2d at 1455 (quoting *Matter of Witlin*, 640 F.2d 661, 663 (5th Cir.1981)).[16] Where the settlor retains the power to acquire all of the trust estate upon request, the inter-

est is not exempt from the claims of creditors. *Fehlhaber*, 850 F.2d at 1455. There is a strong public policy against allowing any person to place his property in what amounts to a revocable trust for his own benefit that would be exempt from the claims of his creditors. *Matter of Witlin*, 640 F.2d at 663. .

In this case, the logical and inevitable inference created by the timing of the Trust's creation, only two months prior to the Bear, Stearns arbitration judgment, is that Lawrence was seeking to shelter his assets in a protected offshore trust. The Bankruptcy Court below found the appellant's denials that the offshore trust was set up to shield assets to be incredible, and it noted that the appellant admitted to placing the money in the trust so that it would be available to him in his old age. *In re Lawrence*, 227 B.R. at 912. This court finds that the Bankruptcy Court's factual conclusions that the appellant set up the Trust for his own benefit were not clearly erroneous. In addition, the January 21, 1993 spendthrift provisions were enacted while the appellant, the Settlor of the Trust, clearly had the discretion under Clause 12 of the Deed of Appointment to remove and appoint trustees. The Trustees, in turn, had the ability to grant the entire corpus of the Trust to the settlor. Therefore, the appellant effectively had dominion over the property of the Trust, and the spendthrift provisions are not enforceable as a shield against creditors.

It appears that Clause 16 of the January 21, 1993 Supplemental Deed was carefully worded so as to avoid permanently revoking the powers of the Settlor. The divestiture is episodic in nature and vests with the Settlor and his hand-picked off-shore trustees the subjective ability to determine which instances of alleged duress or coercion will render the Settlor's powers inoperative. The effect of such a clause, if validated, is to permit the trustees to ig-

---

16. All Fifth Circuit decisions prior to October 1, 1981 are binding precedent on the Elev-

enth Circuit. *Bonner v. Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981).

nore each and every action requested or demanded by the Debtor that may aid or satisfy the claims of creditors or advance the processes of law issued by courts of the United States against the Debtor in respect to the Trust. As the Ninth Circuit has recognized, debtors commonly design offshore asset protection trusts to assist the settlor in attempting to avoid being held in contempt of court while only feigning compliance with the court's orders: "[A] clause could be inserted in the trust contract which specifically directs the trustee to ignore any instruction, exercise of a power, and the like where the direction is given under the compulsion of a court order. Thus, the settlor could comply with the court order and 'order' his trustee to turn over the funds, knowing full well that the trustee will not comply with his request." *Federal Trade Commission v. Affordable Media, LLC,* 179 F.3d 1228, 1241 (9th Cir.1999) (quoting James T. Lorenzetti, *The Offshore Trust: A Contemporary Asset Protection Scheme,* 102 Com.L.J. 138, 158–59 (1997)). In this case, Lawrence's attempts to employ such a strategy contravenes the clear public policy against allowing a debtor to shield money placed in a trust for his or her own benefit from creditors, defies common sense, and is undermined by the language in the Trust granting the Settlor power to remove and appoint trustees.

Furthermore, Appellant's reliance on the March 22, 1995 Declaration of exclusion and the June 16, 1999 Declaration of clarification of intent is also unavailing. The March 22, 1995 Declaration states that "the Trustee hereby excludes the Settlor as a Beneficiary of the Trust, and therefore Mr. Stephan J. Lawrence is as and from this date (sic) an Excluded Person as defined by Clause 10 iii." Pursuant to the May 10, 1993 Supplemental Deed, the power of exclusion "may be irrevocable or revocable during the Trust period." Conspicuously absent from the declaration of exclusion in 1995 is any mention of whether the exclusion of Lawrence was to be revocable or irrevocable. Additionally, the

May 10 exclusion very carefully excluded the settlor **as a beneficiary,** and thus goes to the appellant's rights as a beneficiary and not as a settlor.

Appellant's attempts to point to the June 16, 1999 clarification of intent are not convincing. The June 16, 1999 clarification of intent, issued ten months after the stay entered by Judge King in the *Pompano–Windy City Partners* suit and immediately after the appellee filed a motion seeking to order the appellant to turn over the assets of the Trust, was a transparent attempt by the appellant/trustees to further shield the Trust assets and avoid liability. As such, it is invalid and carries no weight in these proceedings. Even if it were valid, it does not go to the reserved powers of the appellant as settlor of the Trust.

Accordingly, a careful reading of the Trust Indenture reveals that the alleged exclusion of Lawrence in 1995 was nothing more than a smoke screen meant to obfuscate the issues and hide Lawrence's latent control over the Trust; control sufficient, as shown by clear and convincing evidence, to render him capable of complying with the Bankruptcy Court's Turn Over Order.

### D. Due Process Rights

■ The appellant's position in this appeal has been that the Bankruptcy Court and appellee erred by not joining or impleading the Mauritius Trust and the beneficiaries named in the trust documents, and in not conducting a full-fledged evidentiary hearing prior to issuing the Turn Over Order. These arguments are unfounded. The Bankruptcy Court had jurisdiction to order the turn over and was not in error by not impleading or joining the additional parties, and the appellant's failure to appear at the turn over hearing represents nothing more than the appellant's continued effort to thwart the judicial process.

### 1. Joinder of the Mauritius Trust

Appellant has repeatedly argued that the bankruptcy proceedings, and the Turn

Over Order in particular, are invalid because of appellee's failure to join the Mauritius Trust, an indispensable party, in violation of the due process rights of the Trust. Appellant argues that, since the district court required impleader of the Trust in Bear, Stearns' action to enforce its arbitration award by voiding the fraudulent transfer of money to the Trust, the Trust must be impled in this action. *See Pompano–Windy City Partners v. Bear Stearns & Co.,* No. 93–6489–CIV–KING, D.E. 101. According to the appellant, because the 1991 Mauritius Trust was a valid trust under Florida law, notwithstanding its spendthrift provisions, the title to the assets in question is in the hands of the Trust and the Trust must be impled into the bankruptcy action to acquire control over that title.

The court respectfully disagrees with the Debtor's analysis. The foreign trustee was intentionally chosen, and the trust created, by the Debtor in an attempt to thwart the jurisdiction of the bankruptcy court. The foreign trustee enjoys no rights independent of the Trust Indenture, under which he can be replaced at any time at the whim of the Debtor. As such, he does not qualify as even a necessary party under Fed.R.Civ.P. 19(b) standards, where "equity and good conscience" would nonetheless require the turn over to proceed without his joinder. The Trustee can hardly claim standing to represent the beneficiaries' interests, where the Debtor, as Settlor, empowered him, in his sole discretion, to add a beneficiary or class of beneficiaries, while at the same time, the Trustee has the absolute right to exclude a beneficiary or class of beneficiaries from the Trust. *See* January 8, 2000 Declaration of Trust, Clauses 9 and 10(a)(ii). His power in that regard is directly affected by the Debtor, as Settlor, who also enjoys these unfettered, absolute rights of appointment and exclusion pursuant to Sections 10 and 11 of the February 7, 1991 Deed of Appointment. Under the Settlor's reservation of powers, which is property of the estate, it is the Debtor/Settlor who

remains the sole indispensable party. What we are left with is a foreign alleged trust with "at will" trustees, and "at will" beneficiaries, who serve or benefit at the power of the Settlor/Debtor, who created the foreign trust to hide assets and protect himself from creditors. In these proceedings, the Debtor's "indispensable party" argument represents a guise to further shield himself from complying with the Turn Over Order, when, in reality, the so called 'rights of third parties' are no more than smoke.

Within this circuit, at least one recent district court case has not required joinder of the trust in a Chapter 7 turnover proceeding where the trust was held not to be a valid spendthrift trust. *See In re Cattafi,* 237 B.R. 853, 856 (M.D.Fla.1999). In *Cattafi,* the Chapter 7 trustee objected to the debtor's claim of exemption in his beneficial interest in a family trust, and sought turnover of the interest. *Id.* at 855. The debtor was the settlor and a named beneficiary of the trust, but was not the trustee. The court found that the trust was not a valid spendthrift trust because the debtor created the trust for his own benefit and, as settlor, had the power to revoke, amend, or terminate the trust, in large part because the debtor/settlor had the power to change the trustee. *Id.* at 856. Neither the trust nor the trustee were named as parties in the *Cattafi* case, and the court proceeded to find the trust void as to debtor's creditors without discussing their absence. This case arises under a similar factual scenario as *Cattafi,* and the court's process in that case is instructive.

Furthermore, the appellee was not a party to the Bear, Stearns litigation before Judge King, and has never attempted to advance the fraudulent transfer theories argued by Bear, Stearns in that litigation. The appellant has highlighted Judge King's order affirming the Magistrate's recommendation that Bear, Stearns' motion to set aside the transfer of assets to

the Trust as fraudulent be denied because the Trust had not been impled into the action. *See Pompano–Windy City Partners v. Bear, Stearns & Co.*, Case No. 93–6489–CIV–KING, D.E. 101 & 111. Those orders, however, took place prior to the Chapter 7 bankruptcy proceedings at issue in this case. The appellee, in seeking turnover of the Trust *res,* is relying upon the unique powers vested in him pursuant to the provisions of 11 U.S.C. § 521(4), which requires that the debtor surrender to the trustee all property of the estate; no adversary proceeding was filed nor was one required by Fed.R.Bankr.P. 7001. Given that the Bankruptcy Court previously found that the debtor maintained a continued, concealed managerial and beneficial interest in the Trust and that the debtor's interest was part of the estate (*see In re Lawrence,* 227 B.R. at 917), the trustee was justified and empowered to seek turnover of the Trust assets without the need to implead or join the Trust.

In addition, the Mauritius trustees were in fact served with the turn over motion and given notice of the turn over hearing. Their election not to seek to intervene pursuant to Fed.R.Bankr.P. 7024 (incorporating Fed.R.Civ.P. 24) or to otherwise participate in the proceedings to assert their interests effectively waived their right to appear and to be heard. Accordingly, based on case precedent, the facts of the case, and the effective waiver by the Mauritius trustees, failure to join or implead the Mauritius Trust was not reversible error in this case.

**2. Joinder of beneficiaries named in the Trust**

In the court's view, the interests of the beneficiaries named in Schedule 1 of the February 7, 1991 Deed of Appointment are too speculative to cause them to be indispensable parties to the turn over litigation. The court requested briefing on this issue at the January 14, 2000 hearing, yet the appellant chose not to address it, instead concentrating on the failure to implead the Trust itself into the bankruptcy proceeding. The appellant's failure to argue this issue effectively waives it from consideration by this court. Nevertheless, the court finds that the named beneficiaries were not indispensable parties to the turn over proceeding.

As noted, the beneficiaries may be added or replaced at the whim, and at the absolute discretion, of the Trustee or the Settlor/Debtor, and the Debtor explicitly reserved the right to cause them to be wholly or partially excluded from future benefit under the trust. *See* February 7, 1991 Deed of Appointment, Clause 11. Under Section 32 of the Trust Indenture, the trustee has no obligation to communicate with any of the beneficiaries or contact any such beneficiaries or to advise them in respect of the settlement of the Trust or matters in relation thereof or that they are "now or at any time hereafter included in such expression." January 8, 1991 Declaration of Trust, Clause 32. Further, even if beneficiaries are added or excluded pursuant to sections 10 or 11 of the Trust Indenture, by virtue of section 32, the trustee has no obligation to provide any notice to the beneficiaries who have been added or excluded from the Trust. Suffice it to say that the specific terms of the Trust created by the Debtor make the interests of any of the beneficiaries, assuming they could be found, so remote, so shrouded in secrecy even unto themselves, as to render them virtually meaningless.

In *In re Cameron,* 223 B.R. 20, 26 (Bankr.S.D.Fla.1998), Judge Hyman discussed the issue of the need to join certain contingent beneficiaries in a bankruptcy trustee's adversary proceeding to compel a turnover of a self-settled spendthrift trust. After finding, as in this case, that the subject trust was the property of the estate, the court determined that as the interest of the contingent remaindermen had never vested prior to the Trust becoming

property of the estate, their joinder was not necessary.[17]

The question of the indispensability of named beneficiaries arises in light of the fact that Elissa Lawrence de Moreno, one of the appellant's sisters, has filed a separate adversary proceeding in the Bankruptcy Court, Case No. 99–1339–BKC–AJC–A, seeking a declaratory judgment of her rights in and to the Trust. Like the Mauritius trustees' counsel, counsel for Moreno was on the service list for the turn over motion in this case and received notice of the August 26, 1999 turn over hearing. In fact, Mr. Glasser attended the hearing and participated to some degree. *See* August 26, 1999 Tr. at 47–48. Yet counsel for Moreno did not seek to protest the bankruptcy court's action at the hearing, apparently finding that her interests in avoiding repatriation of the Trust *res* by the appellant to the appellee were adequately represented by Lawrence and his attorneys. *See In re Towe*, 173 B.R. 197, 211 (Bankr.D.Mont.1994) ("Joinder is not required where the absent parties' interests are adequately protected by those who are present.").

The Bankruptcy Court had an opportunity to address this issue prior to this appeal. At the October 5, 1999 hearing on Trustee's *Motion to Stay Hearing on Plaintiff's Renewed Motion for Summary Final Judgment* and Moreno's *Emergency Motion for Injunctive Relief,* Bankruptcy Judge Cristol recognized that if the Chapter 7 Trustee, Goldberg, were to recover the Trust *res,* Moreno would have an opportunity to make her claim, if any, against the estate before the assets were distributed to creditors. *See* October 5, 1999 Tr. at 24–26 (attached as Ex. E to Appellee's Supplemental Brief) ("[I]f [Moreno has] a beneficial interest, I don't see a problem with Mr. Goldberg being in a position to turn over what her interest is if her inter-

est is superior to his, and that's a matter that we can determine, but I don't see any emergency here."). There is no reason to disturb the Bankruptcy Court's holding on this issue at this time.

### 3. Evidence presented and appellee's appearance at the turn over hearing

The appellee argues that the turn over order was improper because "no evidence whatsoever was presented regarding Lawrence's present capability to turn over the assets" of the Trust. *See* Initial Brief of Appellant re: Turnover, p. 16 & 33. This argument, however, fails to acknowledge that the Bankruptcy Court properly took notice of the court file to make its findings. As the Bankruptcy Court stated in its August 26, 1999 Turn Over Order:

> The Court has reviewed the voluminous pleadings which have been filed by the parties in [the Bankruptcy] Court and in the United States District Court; including the *Debtor's Motion to Continue Hearing* (Court Paper # 651), the *Trustee's Response to Debtor's Motion to Continue Hearing* (Court Paper # 660), and the *Debtor's Response to the Trustee's Motion to Compel, With Supporting Memorandum of Law* ("Debtor's Response") (Court Paper # 658), and has considered the argument of counsel, the record before the Court in this case and in the adversary proceeding previously commenced by the Trustee against the Debtor (Adv.Pro. No. 98–1211–BKC–AJC–A), the Court's prior rulings in this case and in the adversary proceeding, and being otherwise advised in the premises, the Court hereby incorporates herein by reference all of the findings and rulings entered in the record on August 26, 1999.

---

17. A vested interest is one that is limited to a certain person at a certain time, and in which no condition other than the termination of a preceding estate postpones its enjoyment. *Williams v. Northern Trust Bank of Florida/Sarasota, N.A.,* 819 F.Supp. 1042, 1045 (M.D.Fla.1993) (*citing In re Estate of Martin,* 110 So.2d 421, 423 (Fla. 2d DCA 1959)). In interest is contingent where the right to a future interest depends upon a condition precedent. *Williams,* 819 F.Supp. at 1045.

August 26, 1999 Turn Over Order at 1. There was no evidence in this case that the Trust documents had validly changed between the Bankruptcy Court's September 23, 1998 Order finding the debtor in default and the August 26, 1999 turn over hearing. The record included the debtor's default pursuant to the September 23, 1998 Order, with its clear effect, as well as the trust indenture documents which establish on their face that the appellant, as Settlor of the Trust, has certain absolute, retained powers that constitute substantial rights in and to the Trust and that provide substantial control over the Trust. Therefore, the Bankruptcy Court had sufficient evidence before it to find that the appellee had established by clear and convincing evidence that the Trust *res* was property of the estate, and that Lawrence had sufficient control over the property to effect a turn over.

 Lawrence was given the opportunity to rebut the appellee's *prima facie* case but chose not to attend the turn over hearing. *See Evans v. Robbins*, 897 F.2d at 968 (acknowledging that burden shifting is appropriate in a Chapter 7 turn over hearing). Although the hearing was not noticed as an evidentiary hearing and the bankruptcy judge never required the appellant's presence, the Chapter 7 Trustee asked the appellant's attorney to have him attend the hearing and attempted unsuccessfully to subpoena him. The appellant cannot now turn around and attempt to argue that he was denied his due process rights because he did not present any evidence at the hearing. It is evident on appeal that the appellant's position was and is part of a contrived plan to thwart the Chapter 7 Trustee and the bankruptcy court from resolving issues pertinent to his interest in the offshore Mauritian Trust, and this court will not condone or endorse such actions.

### E. The Contempt Order

On November 19, 1999, this court entered an Interim Order Concerning Review of Bankruptcy Court's September 8, 1999 Contempt Order and October 5, 1999 Incarceration Order [D.E. 13 in Case No. 99–2764–Civ–Gold; D.E. 31 in Case No. 99–2678–Civ–Gold]. That Order deferred a final ruling upon the consolidated appeal in Case No. 99–2678–Civ–Gold of the Bankruptcy Court's September 8, 1999 *Order Adjudicating Debtor in Civil Contempt for Violation of the August 26, 1999 Order Granting Trustee's Motion to Compel Debtor to Turn Over Trust Res and to Fully Disclose all Trust Transactions and Order to Show Cause Pursuant to Fed. R.Bankr.P. 9020(b)* and October 5, 1999 *Order Directing United States Marshal to Incarcerate Debtor for Failure to Turn Over Property of the Bankruptcy Estate Pursuant to Prior Court Orders* until after resolution of this court's review of the August 26, 1999 Turn Over Order. It was noted in the November 19, 1999 Order that justice, logic, and sound judicial policy required the court to determine the propriety of the Bankruptcy Court's Turn Over Order before ruling upon the validity of the Contempt Order.

As this Order has illustrated, the Bankruptcy Court's August 26, 1999 Turn Over Order was properly entered by the Bankruptcy Court. Therefore, it is appropriate at this time for the court to consider the merits of the appellant's appeal of the Contempt and Incarceration Orders.

### 1. Standard of Review

Rule 9020(c) of the Federal Rules of Bankruptcy Procedure mandates that if timely objections are made to a bankruptcy judge's order of contempt, "the order shall be reviewed as provided in Rule 9033." Fed.R.Bankr.P. 9020(c). Rule 9033, which is entitled "Review of Proposed Findings of Fact and Conclusions of Law in Non–Core Proceedings," thus provides the operable standard of review for all contempt orders, regardless of whether they are core or non-core proceedings. *See In re Sun–Island Realty, Inc.*, 177 B.R. 391, 395 (S.D.Fla.1994); *In re*

650

*Williams,* 213 B.R. 189, 195–96 (Bankr. M.D.Ga.1997). According to Rule 9033(d):

(d) *Standard of Review.* The district judge shall make a de novo review upon the record or, after additional evidence, of any portion of the bankruptcy judge's findings of fact or conclusions of law to which specific written objection has been made in accordance with this rule. The district judge may accept, reject, or modify the proposed findings of fact or conclusions of law, receive further evidence, or recommit the matter to the bankruptcy judge with instructions.

Fed.R.Bankr.P. 9033(d). The Advisory Committee Notes to Rule 9033 observe that subdivision (d) adopts the de novo review provisions of Fed.R.Civ.P. 72(b) governing district court review of dispositive motions and prisoner petitions by magistrate judges.

Under *de novo* review, the district judge considers the matter anew, with no assumption of validity of the bankruptcy judge's findings or recommendations, and is free to substitute his own view for that of the bankruptcy judge without any threshold finding whatsoever. *See United States v. First Nat'l Bank of Atlanta,* 628 F.2d 871 (5th Cir.1980). The district judge may not simply "rubber stamp" the disposition recommended by the bankruptcy judge, but must conduct a thorough review. *See Vekamaf Holland, B.V. v. Pipe Benders, Inc.,* 671 F.2d 1185 (8th Cir.1981). The district court need not rehear live testimony prior to adopting findings of fact where credibility plays a central role. *See United States v. Raddatz,* 447 U.S. 667, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980) (permitting the district court to adopt a magistrate judge's credibility findings in a criminal suppression hearing). Here, both Judges Utschig and Cristol conclusively concluded that the Debtor's testimony was not credible. At the *de novo* proceeding, the Debtor did not testify. Accordingly, the Court adopts the credibility findings of both bankruptcy judges in conducting its review.

### 2. The Prima Facie Case

In a civil contempt proceeding, the party seeking the contempt bears the initial burden of proving by clear and convincing evidence that the respondent violated a court order. *Commodity Futures Trading Comm'n (CFTC) v. Wellington Precious Metals, Inc.,* 950 F.2d 1525, 1528 (11th Cir.1992), *cert. denied,* 506 U.S. 819, 113 S.Ct. 66, 121 L.Ed.2d 33 (1992); *In re Shore,* 193 B.R. 598, 601 (S.D.Fla.1996). This burden of proof is more exacting than the "preponderance of the evidence" standard but, unlike criminal contempt, does not require proof beyond a reasonable doubt. *United States v. Rizzo,* 539 F.2d 458, 465 (5th Cir.1976). Once a prima facie showing of a violation has been made, the burden of production shifts to the alleged contemnor, who may defend his failure on the grounds that he was unable to comply. *CFTC,* 950 F.2d at 1528. If the alleged contemnor makes a sufficient showing of impossibility, the burden of proving ability to comply then shifts to the party seeking to show contempt. *See id.*

In this case, it is undisputed that the Chapter 7 Trustee met its initial burden of proving by clear and convincing evidence that the appellant did not comply with the terms of the bankruptcy court's August 26, 1999 Turn Over Order. At the September 2, 1999 hearing, the appellant stipulated that he had not turned over assets or caused them to be turned over and that he had not provided an accounting, and Goldberg testified that he had not received the *res* or the accounting. 9/2/99 Tr. at 9, 22. At the September 16, 1999 status conference, Goldberg informed the court that he had not received any assets from the Trust. 9/16/99 Tr. at 22. Furthermore, at the October 5, 1999 status conference, Goldberg testified that he had still not received any of the Trust's assets from the appellant or from anyone else. 10/5/99 Tr. at 101. The burden of production thus shifted to the appellant to prove that he was unable to comply.

### 3. Impossibility

Once a prima facie showing of a violation has been made, the burden of productions shifts to the alleged contemnor, who may defend his failure on the grounds that he was unable to comply. *CFTC,* 950 F.2d at 1529; *United States v. Rylander,* 460 U.S. 752, 757, 103 S.Ct. 1548, 1552, 75 L.Ed.2d 521 (1983) ("Where compliance is impossible, neither the moving party nor the court has any reason to proceed with the civil contempt action. It is settled, however, that in raising this defense, the defendant has a burden of production."); *United States v. Roberts,* 858 F.2d 698, 701 (11th Cir.1988); *United States v. Hayes,* 722 F.2d 723, 725 (11th Cir.1984). The burden shifts back to the initiating party only upon a sufficient showing by the alleged contemnor. *CFTC,* 950 F.3d at 1529. The party seeking to show contempt, then, has the burden of proving ability to comply. *Id.*

The Eleventh Circuit has held that, to succeed in an inability defense, an alleged contemnor must "go beyond a mere assertion of inability and establish that he has made in good faith all reasonable efforts to meet the terms of the court order he is seeking to avoid." *CFTC,* 950 F.2d at 1529. The court rejected the contemnor's defense, asserted in response to a disgorgement order, that "all the money … was gone," finding that the contemnor had failed to make "in good faith all reasonable efforts" to secure repayments of amounts he had paid to others. *Id.* at 1527.

Thus, in order to prove his inability to comply with the Turn Over Order, the appellant must show "a present inability to comply that goes beyond a mere assertion of inability." *Howard Johnson Co. v. Khimani,* 892 F.2d 1512, 1516 (11th Cir.1990). The alleged contemnor, in this case the appellant, has the burden, which he has failed to meet, of showing he made "in good faith all reasonable efforts" to meet the terms of the court order he is seeking to avoid. *United States v. Roberts,* 858 F.2d 698, 701 (11th Cir.1988).

This requirement is construed strictly, such that substantial, diligent, or good faith efforts are not sufficient to rebut the prima facie showing if "all reasonable efforts" were not made to comply. *See United States v. Hayes,* 722 F.2d 723, 725 (11th Cir.1984); *Combs v. Ryan's Coal Co.,* 785 F.2d 970, 984 (11th Cir.1986).

At the September 2, 1999 status conference in which the bankruptcy court held the appellant in civil contempt, the appellant introduced a letter sent by him to the Trust's counsel in Miami, Ms. Trench, requesting that the assets of the Trust and a full accounting be turned over to Mr. Goldberg. The appellant also introduced Ms. Trench's reply, which stated that her firm no longer represents International Financial Services (IFS), and that it is IFS' position that the United States Bankruptcy Court does not have jurisdiction over them. The appellant also testified at the hearing and reiterated his prior position that he has no control over or communication with the Trust. His testimony was found to lack credibility.

This evidence was insufficient to carry the appellant's burden of proving inability to comply with the court's order to turn over the Trust *res.* In his testimony the appellant referred to the bankruptcy court's September 23, 1998 order, which forbade communication by the appellant with the Trust without permission of the court, as the reason he took no steps other than the letter the day before the hearing to acquire the money from the Trust. 9/2/99 Tr. at 34. The Order clearly left open the option of moving for the court's permission to contact the Trust, but the appellant never took any steps to gain permission for such contact from the bankruptcy court or the Chapter 7 trustee. In addition, the bankruptcy court found the appellant not credible, and there is nothing in the testimony to dispute that finding. From the record before the court, it is clear that the appellant presented virtually no evidence at the September 2, 1999 hear-

ing to substantiate his contention that he did not have the present ability to comply with the court's previous Turn Over Order. Accordingly, the appellant failed to meet his burden of proving the impossibility defense, and the burden of production did not shift back to the appellee to prove that compliance was possible.

### a. Self-created impossibility

■ The bankruptcy court also found that any impossibility claimed by the defendant was self-created, and, therefore, was an invalid defense.[18] The bankruptcy court relied specifically on *Pesaplastic, C.A. v. Cincinnati Milacron Co.*, 799 F.2d 1510 (11th Cir.1986), which stated that "where the person charged with contempt is responsible for the inability to comply, impossibility is not a defense to the contempt proceedings." *Id.* at 1521. Recently, the Eight Circuit, citing to the Eleventh Circuit's decision in *CFTC*, also confirmed that a mere assertion of "present inability" is insufficient to avoid a civil contempt finding. *Chicago Truck Drivers v. Brotherhood Labor Leasing*, 207 F.3d 500, 506 (8th Cir.2000). Rather, the Eight Circuit stated that "alleged contemnors defending on the ground of inability to comply must establish: (1) that they were unable to comply, explaining why 'categorically and in detail,' *Federal Trade Commission v. Affordable Media, LLC*, 179 F.3d 1228, 1241 (9th Cir.1999); (2) that their inability to comply was not 'self-imposed,' *In re Power Recovery Sys., Inc.*, 950 F.2d 798, 803 (1st Cir.1991); and (3) that they made 'in good faith all reasonable efforts to comply,' *CFTC*, 950 F.2d at 1529." *Id.*

18. The Court specifically adopts Judge Cristol's legal analysis and findings on the defense of impossibility as they appear in *In re Lawrence*, 238 B.R. at 500. Judge Cristol stated, in part: "The Court rejects the Debtor's contention that under the facts of this case he cannot be compelled to do an act that is impossible, to wit: repatriate the *res* of the Alleged Trust. While impossibility is a recognized defense to a civil contempt order, the law does not recognize the defense of impossibility when the impossibility is self created.

■ This Court also concludes that the appellant's argument lacks merit, is not supported by the evidence, and does not meet any of the *Chicago Truck Drivers* three-prong test. The only case cited in support of appellant's argument is *Federal Trade Commission v. Blaine*, 308 F.Supp. 932 (N.D.Ga.1970). *Blaine* involved the seeking of a contempt citation for failure to produce documents not shown to be in the possession or control of the defendant. The court stated that previous good faith disposal and current unavailability would not make the respondent responsible for the unavailability, but that he could be found in contempt for bad faith disposal of the documents prior to service of the subpoena. *See id.* at 933–34. In this case, the appellant testified that he voluntarily settled the Trust. 9/2/99 Tr. at 35. As both Judge Utschig and Judge Cristol stated in their published opinions as well as numerous times from the bench during the course of these proceedings, it defies common sense and logic to believe that the appellant did not settle this Trust in a bad faith effort to shelter his money from creditors. Thus the prior good faith transfer exception to the self-created impossibility bar is not available to the appellant, and his claim of impossibility is likewise barred by this fact.

### b. Appellant's continuing attempts to purge the contempt

■ The contemnor in a civil contempt proceeding retains the ability to purge himself of the contempt, or to otherwise excuse himself from the imposition of sanctions. *See In re Shore*, 193 B.R. 598, [citation omitted]. The Debtor has testified that he voluntarily established the Alleged Trust in 1991. Since the provisions which he now relies upon in order to substantiate his inability to comply with the Turn Over Order were of his own creation, he may not claim the benefit of the impossibility defense. Giving credence to the Debtor's argument would be tantamount to succumbing to the pleas for sympathy from an orphan who has killed his parents." *Id.*

603 (S.D.Fla.1996). Compliance "to the fullest extent possible, regardless of whether such efforts result in compliance in whole or in part" is necessary to purge the contempt. *Piambino v. Bestline Products, Inc.,* 645 F.Supp. 1210, 1214 (S.D.Fla. 1986).

██ It is the appellant's contention that he took every means possible to effectuate the turnover of the Trust *res.* At the status conference on September 16, 1999, the appellant introduced a letter that was sent on September 13, 1999, one day before the originally scheduled date of the hearing, by regular mail only, to the unknown current trustee of the Trust, care of International Financial Services, Ltd. in Mauritius, asking that the trust *res* be turned over, a full accounting given, and Paul Singerman appointed as the new trustee. *See* Appellee's Ex. G. In order to see whether the appellant was making sufficient efforts to purge the contempt, a further status conference was set for the first week in October. At the October 5, 1999 follow-up hearing before the bankruptcy court, a Declaration and Supplemental Deed of Appointment, executed on October 4, 1999 by Mr. Goldberg and stating that he is now the sole successor trustee of the Trust, was admitted into evidence. Goldberg testified that he did not execute the Deed of Appointment as a joke or sham. 10/5/99 Tr. at 102. The appellant also represented at the October 5th hearing that the September 13th letter of instruction was faxed to International Financial Services, that the appellant requested his passport from the bankruptcy court and Goldberg so as to travel to Mauritius to enforce compliance, and that the appellant made preliminary contact with several Mauritian attorneys through the Internet seeking advice about how to obtain the trust *res. See* 10/5/99 Tr. at 104–108; Appellee's Ex. H.

The court finds that these actions do not constitute sufficient steps to purge the contempt finding. The Ninth Circuit's holding in *Federal Trade Commission v.*

*Affordable Media, LLC,* 179 F.3d 1228 (9th Cir.1999) is instructive. *Affordable Media* involved an attempt by a couple, the Andersons, to hide money in an offshore trust based in the Cook Islands, claiming that they had willingly relinquished all control over millions of dollars to unaccountable overseers. The trust was set up with the Andersons as co-trustees, together with a trustee company, and contained a provision that revoked their trustee status in the event of duress, such as the court's order to turn over the trust's assets. In finding that the Andersons' burden of proving impossibility could not be met, the Ninth Circuit set forth language that is particularly relevant in this case:

> In the asset protection context, moreover, the burden on the party asserting the impossibility defense will be particularly high because of the likelihood that any attempted compliance with the court's order will be merely a charade rather than a good faith effort to comply. Foreign trusts are often designed to assist the settlor in avoiding being held in contempt of a domestic court while only feigning compliance with the court's orders.

*Affordable Media,* 179 F.3d 1228, 1241. The court went on to explain that:

> With foreign laws designed to frustrate the operation of domestic courts and foreign trustees acting in concert with domestic persons to thwart the United States courts, the domestic courts will have to be especially chary of accepting a defendant's assertions that repatriation or other compliance with a court' order concerning a foreign trust is impossible. Consequently, the burden on the defendant of proving impossibility as a defense to a contempt charge will be especially high. *Id.*

*Id.* When placed in context, appellant's half-hearted, last-minute attempts to purge the contempt finding are plainly insufficient and do not demonstrate that compliance is impossible.

■ The appellant has attempted to distinguish the *Affordable Media* case, arguing that the facts are inapposite because Lawrence was never a trustee, there is no "protector" or any such person with power to give instructions to the trustee in this case, and the Andersons had repatriated a large sum of money a short time before the litigation. *Affordable Media*, however, still stands for the proposition that "the burden on the defendant of proving impossibility as a defense to a contempt charge will be especially high" when the defendant is attempting to shield assets from creditors in an offshore trust, and for a strong public policy against permitting a party to avoid contempt by feigning compliance with the court's orders. *Affordable Media*, 179 F.3d at 1241. The appellant was not able to meet the heightened burden of proof called for by *Affordable Media* in this case.

### 4. Judicial Estoppel

■ Judicial estoppel is an equitable doctrine that prevents a party from contradicting previous declarations made during the same or a later proceeding if the change in position would adversely affect the proceeding or constitute a fraud on the court. Black's Law Dictionary 571 (7th ed.1999). At its core, the doctrine of judicial estoppel ensures that a party will not argue "inconsistent positions to gain an unfair advantage over its adversary." *Alaska Airlines, Inc. v. United Airlines, Inc.*, 948 F.2d 536, 540 (9th Cir.1991), *cert. denied*, 503 U.S. 977, 112 S.Ct. 1603, 118 L.Ed.2d 316 (1992).

The appellant contends that Goldberg should be estopped from pursuing contempt against the appellant in light of his prior and subsequent contradictory positions taken before various other tribunals. Appellant argues that Goldberg has taken the previous position of insisting that there is no Trust, while simultaneously acting as if the Trust does exist and trying to take advantage of its elements offensively against third parties.

The application of judicial estoppel is not warranted in this case. It is not inconsistent for Goldberg to seek turn over of the assets of the Trust, while noting to the court that the trust instrument provided by the appellant does not contain the appellant's signature. It is also not inconsistent for Goldberg to assert the Trust's "excluded person" provision offensively in a declaratory proceeding brought by Elissa Lawrence de Moreno, Case No. 99–1339–BKC–AJC–A, while maintaining in the underlying Chapter 7 proceeding, Case No. 97–14687–BKC–AJC, that Stephan Jay Lawrence is not an excluded person, but even if he was, the provision was not effective as to him. Throughout these proceedings, Goldberg has maintained that, as settlor of the Trust, the appellant retained pervasive power and control which is tantamount to constructive possession, custody and control over the Trust, regardless of the Trust's 1995 amendment, unilaterally enacted by the Trust's trustee, declaring Stephan Lawrence an excluded person. Accordingly, the defense of judicial estoppel is devoid of merit.

### IV. Conclusion

A thorough review of the record before the court, the applicable case law, and the arguments of the parties reveals that the Bankruptcy Court's August 26, 1999 Turn Over Order, September 8, 1999 Contempt Order, and October 5, 1999 Incarceration Order should all be affirmed. Accordingly, the following Final Order is entered by the undersigned U.S. District Court Judge with respect to Bankruptcy Appeal Case No. 99–2678–CIV–GOLD and Bankruptcy Appeal Case No. 99–2764–CIV–GOLD.

### FINAL ORDER AND JUDGMENT ON APPEAL

Based on the Order set forth above, it is

**ORDERED AND ADJUDGED** that the Bankruptcy Court's August 26, 1999 *Order Granting Trustee's Motion to Compel Debtor to Turn Over Trust Res and to*

*Fully Disclose all Trust Transactions and Order to Show Cause Notice Pursuant to Fed.R.Bankr.P. 9020(b)* (the "Turn Over Order"), September 8, 1999 *Order Adjudicating Debtor in Civil Contempt for Violation of the August 26, 1999 Order Granting Trustee's Motion to Compel Debtor to Turn Over Trust Res and to Fully Disclose all Trust Transactions and Order to Show Cause Pursuant to Fed.R.Bankr.P. 9020(b)* (the "Contempt Order") and October 5, 1999 *Order Directing United States Marshal to Incarcerate Debtor for Failure to Turn Over Property of the Bankruptcy Estate Pursuant to Prior Court Orders* (the "Incarceration Order") are AFFIRMED. It is further

**ORDERED AND ADJUDGED** that these matters are REMANDED to the Bankruptcy Court to take all the necessary and proper steps to act in accordance with this Order. It is further

**ORDERED AND ADJUDGED** that Case Nos. 99–2764–CIV–GOLD and 99–2678–CIV–GOLD are CLOSED. Any pending motions in either of those two cases not disposed of by this Order are dismissed as moot. It is further

**ORDERED AND ADJUDGED** that the Bankruptcy Court's implementation of the Incarceration Order shall be STAYED for thirty (30) days from the date of this Order to permit the appellant to seek review and an additional stay in the Court of Appeals.