COMMODITY FUTURES TRADING COMMISSION and the State of Florida, Plaintiffs–Appellees,

v.

WELLINGTON PRECIOUS METALS, INC., et al., Defendants,

Daniel Weiss, Defendant–Appellant.

No. 90–5726.

United States Court of Appeals, Eleventh Circuit.

Jan. 14, 1992.

Kenneth M. Swartz, Asst. Federal Public Defender, Miami, Fla., for defendant-appellant.

Susan M. Milligan, Victor L. Reid, Washington, D.C., for CFTC.

Gary L. Printy, Asst. Gen. Counsel, Dept. of Banking & Finance, Legal Section, Tallahassee, Fla., for State of Fla.

Before FAY and HATCHETT, Circuit Judges and HILL, Senior Circuit Judge.

PER CURIAM:

Appellant, Daniel Weiss, was found guilty, in a civil proceeding, of fraudulent sales of securities through a rather large "boiler room" operation. As a result of that trial, he was ordered to disgorge $2.8 million. Upon failure to make any payments whatsoever, Weiss was found in contempt and ordered to pay five percent of the sum or face incarceration. Again Weiss paid nothing and was confined. Several months later, Weiss filed a motion with the district court to terminate the contempt order and release him from prison. The district court denied this motion and Weiss remains incarcerated. For the reasons that follow, we AFFIRM the district court's finding of civil contempt and its denial of Weiss's motion to terminate the contempt order.

### I.

On October 21, 1988, following a bench trial, Weiss was ordered by the district court to disgorge within ten days $2,883,-107.00 for fraudulently selling off-exchange futures contracts to the public, in violation of Sections 4a and 4b(A) of the Commodity Exchange Act,[1] and for operating a "boiler room" and fraudulently selling investments to the public, in violation

---

1. 7 U.S.C. §§ 6a & 6b(A).

of various sections of the Florida Securities and Investor Protection Act.[2] The $2.8 million figure represented Weiss's share of the illegal "salaries, draws, fees, and commissions" generated by the fraud. (R10:274 at 6). Weiss did not appeal this order.

Almost exactly one year after the court entered its order to disgorge, Weiss still had not shelled out a penny. On a motion brought by plaintiffs-appellees, Commodity Futures Trading Commission (CFTC) and the State of Florida, Senior District Judge C. Clyde Atkins held a hearing to determine whether Weiss's failure to pay was grounds for contempt.[3] At the hearing, Weiss acknowledged that he had failed to comply with the court's disgorgement order but argued that his noncompliance should be excused because he was financially unable to meet the terms of the order. Weiss claimed that all the money he made from his fraudulent activities was gone. Weiss's argument to the court was twofold. First, Weiss attempted to show that the $2.8 million disgorgement figure in the court order was incorrect. Weiss argued that he in fact made only approximately $1.4 million from his illegal activities. Second, Weiss accounted for the $1.4 million in the following way:

—$150,000 invested in an art gallery called "Ventures," which went bankrupt;

—$225,000 invested in a bakery business called "Mr. Knish," which went bankrupt;

—$385,000 loaned to American Luxury Kitchens, for which Weiss received no collateral.[4] The business went bankrupt and Weiss has not received a penny on his loan;

—$50,000 loaned to his brother Marcus Weiss, for which Weiss has received repayment of only $2,000;

—$60,000 loaned to his son Stuart Weiss, who has not repaid him;

—$150,000 loaned to friends Sybil and Lawrence Austin, who have not repaid him;

—$130,000 loaned to Intrepid Ventures, Inc., a real estate investment venture which went bankrupt;

—$30,000 for a Maserati automobile which was repossessed;

—$24,000 for a Jaguar automobile which was given away as a present;

—$23,000 for a Peugeot automobile which was also given away;

—$42,000 for a boat which was claimed by the Internal Revenue Service (IRS);

—$40,000 for a downpayment on a house which was resold without recoupment of the downpayment; and

—$40,000 for a horse which was put to sleep.

Weiss admitted that he did not institute judicial proceedings against his debtors and that his attempts to secure repayment consisted only of contacting the debtors. Weiss further testified that his only remaining asset was his home, with an equity value of $60,000. However, he claimed that he was unable to sell the house because of an IRS tax lien. Weiss also explained that he did not seek salaried employment during 1989 and that he and his wife were living off of her salary and her student loans. Plaintiffs presented no evidence at the hearing to rebut Weiss's evidence or to otherwise prove that Weiss was in fact able to meet the terms of the disgorgement order.

On March 14, 1990, the district court issued an order finding Weiss in civil contempt for failure to comply with the October 21, 1988 disgorgement order. Judge Atkins rejected Weiss's attempt to reargue the $2.8 million figure in the disgorgement order and found unconvincing Weiss's ex-

---

**2.** Fla.Stat.Ann. §§ 517.275, 517.301(1), 517.312(1)(a), 517.312(1)(b) (West 1988).

**3.** CFTC and the State of Florida filed their motion for an order to show cause for contempt on January 27, 1989 and the civil contempt hearing was held on the three days of October 20, 23, and 24, 1989.

**4.** For his investment Weiss received a promissory note from the President of American Luxury Kitchens, Ron Chefron, for which Mr. Chefron is not personally liable. Weiss testified that Chefron is a friend of his.

planations for what happened to the $1.4 million he admitted to receiving for his part in the commodities investment fraud. Judge Atkins ordered Weiss, under penalty of arrest and imprisonment, to pay five percent of the total amount due under the disgorgement order, or $144,155.35, no later than March 22, 1990. Weiss did not meet the March 22, 1990 deadline. Instead, he filed an emergency motion to stay execution of the contempt order and received an additional thirty days in which to make his $144,155.35 payment. Once again, Weiss failed to meet the deadline and requested another extension. This time, however, his request was denied and on April 24, 1990, Weiss was incarcerated.

After several months in prison, Weiss filed a motion asking the district court to terminate its March 14, 1990 order of civil contempt claiming that the time he had spent in jail was proof that he did not have the funds required to pay the $144,155.35 due under that order. Weiss's motion was denied on July 24, 1990, and Weiss remains incarcerated to this date.

Weiss appeals the district court's contempt order of March 14, 1990, and its July 24, 1990 order denying his request to terminate the contempt order.

## II.

We must consider the following issues on appeal: (1) whether the district court erred in refusing to allow Weiss to reargue the amount he was required to pay in the underlying disgorgement order; (2) whether the district court was clearly erroneous in finding that Weiss failed to prove that he was unable to comply with the district court's disgorgement order; and (3) whether the civil contempt order of March 14, 1990 continues to be coercive.

### A. *The Amount of the Order*

■ Initially, Weiss argues that the district court erred by not considering evidence that he received $1.4 million, as opposed to $2.8 million, for his part in the commodities investment fraud. The district court determined that Weiss had already argued that issue and was not enti-

tled to reargue it in the contempt proceeding. Weiss does not dispute the findings of the district court. Instead, he contends that the different burdens of proof used in the two proceedings (a preponderance of the evidence standard in the commodities investment fraud trial and a clear and convincing evidence standard in the civil contempt hearing) make inappropriate the use of issue preclusion in the latter, civil contempt hearing. Weiss relies on § 28(4) of the Restatement (Second) of Judgments (1982), which provides in relevant part:

> Although an issue is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, relitigation of the issue in a subsequent action between the parties is not precluded [if] ...
>
> ....
>
> (4) ... the adversary [of the party sought to be precluded] has a significantly heavier burden than he had in the first action....

*See also In re Braen,* 900 F.2d 621, 624 (3d Cir.1990), *cert. denied,* — U.S. —, 111 S.Ct. 782, 112 L.Ed.2d 845 (1991). Weiss's argument falls short of the mark, however, because the different burdens, as they are used in the two proceedings, do not measure the same issue. In the commodities investment fraud trial, the plaintiffs proved by a preponderance of the evidence that Weiss *engaged in fraudulent activity and received $2.8 million.* In the civil contempt hearing, the plaintiffs must prove by clear and convincing evidence, only, that Weiss *violated an outstanding court order,* not that he received $2.8 million. Furthermore, in a civil contempt proceeding the underlying order is not at issue. The court will not reconsider the legal or factual basis of the order alleged to have been disobeyed. Direct appeals are available to test such conclusions. As the Supreme Court observed in *Maggio v. Zeitz,* 333 U.S. 56, 69, 68 S.Ct. 401, 408, 92 L.Ed. 476 (1948):

> It would be a disservice to the law if we were to depart from the long-standing rule that a contempt proceeding does not open to reconsideration the legal or fac-

tual basis of the order alleged to have been disobeyed and thus become a retrial of the original controversy. The procedure to enforce a court's order commanding or forbidding an act should not be so inconclusive as to foster experimentation with disobedience.

See also United States v. Rylander, 460 U.S. 752, 756–57, 103 S.Ct. 1548, 1552, 75 L.Ed.2d 521 (1983) (defendant in civil contempt proceeding could not attack enforcement order on ground that he never had possession or control of the documents he was required to produce when that issue had already been determined by the enforcement order). Therefore, we hold that the district court did not err in finding that Weiss was not permitted to reargue the $2.8 million figure. That controversy has been litigated and resolved.

### B. Civil Contempt

■■■ Weiss next argues that the district court erred by holding him in civil contempt and incarcerating him when he has no money to comply with the court's order. A party seeking civil contempt bears the initial burden of proving by clear and convincing evidence that the alleged contemnor has violated an outstanding court order. See Citronelle–Mobile Gathering, Inc. v. Watkins, 943 F.2d 1297, 1301 (11th Cir.1991); Combs v. Ryan's Coal Co., 785 F.2d 970, 984 (11th Cir.), cert. denied, 479 U.S. 853, 107 S.Ct. 187, 93 L.Ed.2d 120 (1986). Once a prima facie showing of a violation has been made, the burden of production shifts to the alleged contemnor, who may defend his failure on the grounds that he was unable to comply. Rylander, 460 U.S. at 757, 103 S.Ct. at 1552 ("Where compliance is impossible, neither the moving party nor the court has any reason to proceed with the civil contempt action. It is settled, however, that in raising this defense, the defendant has a burden of production."); United States v. Roberts, 858 F.2d 698, 701 (11th Cir.1988); United States v. Hayes, 722 F.2d 723, 725 (11th Cir.1984). The burden shifts back to the

initiating party only upon a sufficient showing by the alleged contemnor. The party seeking to show contempt, then, has the burden of proving ability to comply. Combs, 785 F.2d at 984 ("The party seeking the contempt citation retains the ultimate burden of proof ..."); In re Battaglia, 653 F.2d 419, 423 (9th Cir.1981).

■■■ It is undisputed that CFTC and the State of Florida met their initial burden of proving by clear and convincing evidence that Weiss did not comply with the terms of the October 21, 1988 order to disgorge $2.8 million. He had not come forward with one dollar. The burden of production then shifted to Weiss. Weiss argues that he met this burden and properly established the defense of present inability to comply and that it was then up to CFTC and the State of Florida to prove that he was in fact capable of paying. We disagree.

In order to succeed on the inability defense, the alleged contemnor "must go beyond a mere assertion of inability," Hayes, 722 F.2d at 725, and establish that he has made "in good faith all reasonable efforts" to meet the terms of the court order he is seeking to avoid. Roberts, 858 F.2d at 701; Combs, 785 F.2d at 984 ("We construe this requirement strictly. 'Even if the efforts he did make were "substantial," "diligent" or "in good faith," ... the fact that he did not make "all reasonable efforts" establishes that [respondent] did not sufficiently rebut the ... prima facie showing of contempt.' " (quoting Hayes, 722 F.2d at 725)); United States v. Rizzo, 539 F.2d 458, 465 (5th Cir.1976).[5]

On appeal, the district court's finding that the contemnor has not met his burden of production in presenting his defense of present inability to comply is a factual determination entrusted to the sound discretion of the court and subject to the clearly erroneous rule. Roberts, 858 F.2d at 701; Combs, 785 F.2d at 983.

---

**5.** In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), this court adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to October 1, 1981.

Weiss introduced tax returns and other documents, as well as the testimony of several witnesses, to establish the fact that he spent $1.4 million and that none of that money was retrievable. However, $1.4 million is only fifty percent of the total amount of the disgorgement order. Weiss presents no evidence regarding the whereabouts of the other half of the $2.8 million he received for his part in the fraud. For this reason alone, the district court was correct in concluding that Weiss did not meet his burden of production. *See Roberts*, 858 F.2d at 701 (evasive and incomplete testimony will not satisfy burden of production); *Combs*, 785 F.2d at 984 (presentation of incomplete financial statement does not satisfy requirement to make "all reasonable efforts" to comply with court order to produce financial records). As for the $1.4 million that Weiss does attempt to account for, like the district court, we find it hard to believe that "virtually every entity which benefitted from Weiss's munificence went broke and cannot, at this point, repay him a penny." (R11:343 at 10). It is indeed suspicious that: (1) a sophisticated businessman such as Weiss did not demand that his debtors secure their loans with collateral; (2) all of Weiss's loans were made to friends and relatives; and (3) Weiss took no affirmative steps to retrieve the money owed him. From this evidence, the district court concluded, and we think rightly so, that "Weiss's loans were not arms-length transactions between neutral parties." *Id.* Furthermore, the fact that Weiss did nothing to pursue repayment of these loans, other than to ask his debtors to pay back the money owed, undercuts his position that he has made "all reasonable efforts" to comply with the court's order. *Hayes*, 722 F.2d at 725–26 (Respondent who was required to produce certain financial records did not make all reasonable efforts "merely by adducing evidence that he *requested* the documents (even diligent requests involving trips to Switzerland), when it appears that he [had] greater leverage at his disposal."). Even more impor-

tant, however, is the fact that the district court found Weiss's explanations unworthy of belief.[6] Credibility is a matter for the judicial officer who listens to and personally observes the witness. *See Weathers Towing, Inc. v. M/V Herman Pott*, 570 F.2d 1294, 1296 (5th Cir.1978) (trial judge determines credibility of testimony in bench trial); Wright & Miller, Federal Practice & Procedure: Civil § 2586. The district court was not clearly erroneous in finding that Weiss did not successfully prove his inability defense.

## C. *Continued Incarceration*

 Weiss's final argument to this court is that the district court, in its order of July 24, 1990, erred in its determination that the civil contempt order had not lost its coercive effect. Civil contempt sanctions are, of course, employed by the courts to secure compliance with their orders. *See In re Grand Jury Investigation (Braun)*, 600 F.2d 420, 422 (3d Cir.1979) ("Embedded in Anglo–American law is the inherent power of the judiciary to coerce obedience to its orders by summarily holding a recalcitrant person ... in civil contempt, and then imprisoning him until he complies."). However, when civil contempt sanctions lose their coercive effect, they become punitive and violate the contemnor's due process rights. *In re Grand Jury Proceedings (Howald)*, 877 F.2d 849, 850 (11th Cir.1989). Therefore, when considering a motion to terminate a civil contempt order, "the district court must make an individualized determination as to whether there exists a realistic possibility that the contemnor will [comply]." *Id.; see also Simkin v. United States*, 715 F.2d 34, 37 (2d Cir.1983) ("As long as the judge is satisfied that the coercive sanction might yet produce its intended result, the confinement may continue. But if the judge is persuaded ... that the contempt power has ceased to have a coercive effect, the civil contempt remedy should be ended."). The burden is on the contemnor to prove that

---

6. In the March 14, 1990 civil contempt order, Judge Atkins pointed out that, "the court carefully observed Weiss's demeanor during the hearing, and the court found that demeanor to be dubious." (R11:343 at 10).

"no such realistic possibility exists," *Simkin,* 715 F.2d at 37, and on review, the findings of the district court are subject to an abuse of discretion standard. *See In re Grand Jury Proceedings (Howald),* 877 F.2d at 850; *see also Simkin,* 715 F.2d at 38 (In determining whether a civil contempt sanction has lost its coercive effect, a district judge has virtually unreviewable discretion.).

 Weiss maintains that the time he has spent in prison is proof that he cannot comply. The district court rejected this argument finding:

> The mere fact that Weiss has spent some time in prison does not necessarily prove that Weiss has been telling the truth all along and cannot, at this juncture, make restitution. To the contrary, it is far more plausible under the circumstances of this case that Weiss's refusal to pay means simply that Weiss deems the detriments of incarceration outweighed by the concomitant benefits of holding onto his ill-gotten Wellington monies.

(2d Supp.R. at 2–3) We agree. Prison time, in and of itself, will not satisfy Weiss's burden of proving that there exists no "realistic possibility" that he can comply with the court's contempt order. While each passing month of incarceration may strengthen Weiss's claim of inability, *see United States ex rel. Thom v. Jenkins,* 760 F.2d 736, 740 (7th Cir.1985) ("[I]t can be assumed that at a certain point any man will come to value his liberty more than [the amount of money the order requires him to pay] and the pride lost in admitting that he has lied."), many months or perhaps even several years may pass before it becomes necessary to conclude that incarceration will no longer serve the purpose of the civil contempt order. *Id.* There was no abuse of discretion in denying Weiss's motion to terminate the contempt order.

### III.

For the foregoing reasons we AFFIRM the district court's March 14, 1990 order of civil contempt and its July 24, 1990 order denying Weiss's motion to terminate civil contempt.