[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JANUARY 23, 2002
THOMAS K. KAHN
CLERK

No. 00-14481

D.C.  Docket Nos. 99-02678-CIV-ASG
and 99-14687-BKC-AJ

IN RE:

      STEPHAN JAY LAWRENCE,

                                Debtor.

STEPHAN JAY LAWRENCE,

                                Plaintiff-Appellant,

     versus

ALAN L. GOLDBERG, Trustee, duly authorized and
acting Chapter 7 Trustee for the bankruptcy estate of
Stephan Jay Lawrence,

                                Defendant-Appellee.

STEPHEN JAY LAWRENCE,

                                Plaintiff-Appellant,

     versus

ALAN L. GOLDBERG,

                                Defendant-Appellee.

Appeal from the United States District Court
for the Southern District of Florida

**(January 23, 2002)**

Before EDMONDSON, DUBINA and POLITZ[*], Circuit Judges.

POLITZ, Circuit Judge:

Stephen Lawrence appeals the bankruptcy court's order adjudging him in contempt and ordering his imprisonment until the contempt is purged. For the reasons assigned, we affirm.

## BACKGROUND

In January 1991, Lawrence settled an offshore Trust, with an estimated value of $7 million dollars. According to the Trust, Lawrence had the sole power to appoint Trustees. Two months later, an arbitration judgment was issued against him in the amount of $20.4 million dollars. Over time, several amendments were made to the Trust. In February 1991, a spendthrift provision was added. In January 1993, the Trust was amended so that settlor's powers could not be executed under duress or coercion and his life interest would terminate in the event of his bankruptcy. In March 1995, an amendment was added declaring Lawrence

---

[*]Honorable Henry A. Politz, U. S. Circuit Judge for the Fifth Circuit, sitting by designation.

to be an "excluded person" under the Trust, thus proscribing his ever becoming a beneficiary of the Trust. Finally, in 1999, the Trustees issued a "Declaration of Intent" stating that the excluded person status was irrevocable.[1]

In June 1997, Lawrence filed a voluntary petition in bankruptcy. The Bankruptcy Trustee objected to the debtor's discharge. During that proceeding, a discovery dispute arose over the sufficiency of Lawrence's answers to interrogatories. After a hearing, the court issued a default judgment deeming the facts alleged in the Trustee's complaint established, found that the rights and obligations of the Trust were governed by Florida law, not the law of Mauritius, which is the law chosen by the Trust documents, and found that the Trust was property of the estate. That order is now final.

In July 1999, the Bankruptcy Trustee sought an order directing Lawrence to turn over the assets of the Trust. The order was granted and the court set a September status conference to determine Lawrence's compliance therewith. At that conference the court found that Lawrence had control over the Trust, through his retained powers to remove and appoint Trustees and to add and exclude beneficiaries, and it rejected Lawrence's impossibility defense. It then held

---

[1]We agree with the district court that this 1999 Declaration is to be given no effect herein. It was done in violation of 11 U.S.C. § 362(a)(3) and the stay order entered by the district court.

Lawrence in contempt for failing to turn over the Trust assets. On September 8, 1999, the court issued its contempt order. Lawrence declined to comply and on October 5, 1999, the bankruptcy court ordered his incarceration pending compliance. On July 31, 2000, the district court affirmed both the Turn Over Order and the contempt orders. Lawrence timely appealed.

Lawrence remains incarcerated at this time. According to the terms of the contempt order, he is fined $10,000 per day until he purges his contempt. Lawrence claims that on September 13, 1999, he executed a document naming Goldberg as Trustee of the Trust and advised the previous Trustees of this action. He insists that this is the limit of his power to turn over the assets of the Trust to the bankruptcy Trustee.

## ANALYSIS

A Bankruptcy Court has the power to imprison a debtor for contempt of court when the debtor fails to comply with a Turn Over Order.[2] Once a proper showing of a violation of the order has been made, "the burden of production then shifts to the alleged contemnor, who may defend his failure on the grounds that he was unable to comply. . . . In order to succeed on the inability defense, the alleged contemnor must go beyond a mere assertion of inability and establish that he has

---

[2]In Re Hardy, 97 F.3d 1384 (11th Cir. 1996).

4

made in good faith all reasonable efforts to meet the terms of the court order he is seeking to avoid."[3] On appeal, the district court's finding that the contemnor has not met his burden of proof in presenting his impossibility defense is a factual determination subject to review under the clearly erroneous rule.[4] The courts *a quo* determined that Lawrence's testimony was not credible and that the Trust documents did not preclude his exercise of control over the Trust. Accordingly, both the bankruptcy court and the district court found that Lawrence failed to support his proffered impossibility defense.

In a similar case, <u>Federal Trade Commission v. Affordable Media, LLC</u>,[5] the Ninth Circuit held that the district court did not err in finding that the contemnors' compliance was not impossible because they remained in control of an offshore Trust. In that case the contemnors, the Andersons, created a Trust in the Cook Islands which contained a duress clause providing that in the event of duress the Andersons would be terminated as co-trustees and, accordingly, control over the Trust assets would appear to be exclusively in the hands of a foreign Trustee. After the Andersons were ordered to repatriate the Trust assets to the United States,

---

[3]<u>Commodity Futures Trading Comm'n v. Wellington Precious Metals</u>, 950 F.2d 1525, 1529 (11th Cir. 1992) (citations omitted).

[4]<u>Id.</u>

[5]179 F.3d 1228 (9th Cir. 1999).

5

they, as protectors of the Trust, sent a notice to the foreign Trustee ordering it to repatriate the funds based on the court order. The Trustee then removed the Andersons from their positions as co-trustees and refused to comply with the order to repatriate, basing the decision on the duress provision of the Trust.

The Andersons claimed that compliance with the court's order would be impossible because they no longer had control over the Trust. Our appellate colleagues found that the "protector's" powers over an offshore Trust were significant when given "affirmative" powers such as the power to appoint a new Trustee. The Andersons' recognized this power and attempted to resign as the protectors. The appellate court found this to be compelling evidence demonstrating their ability to control the Trust. The court held that the "asset protection Trust" was designed to frustrate the power of the courts to enforce judgments, and found that there was "little else that a district court judge can do besides exercise its contempt powers to coerce people like the Andersons into removing the obstacles they placed in the way of a court."[6] The court also pointedly observed that, "While it is possible that a rational person would send millions of dollars overseas and retain absolutely no control over the assets, we

---

[6]Id. at 1243.

6

share the district court's skepticism."[7]

In Commodity Futures Trading Commission v. Wellington Precious Metals, Inc, we examined the impossibility defense and held that the contemnor did not present evidence sufficient to establish same. The contemnor claimed that the court's $2.8 million figure was inaccurate, asserting that he only made $1.4 million from his illegal activities, and he produced documents stating that the money was no longer in his possession. He maintained that he had used the money for payment of various unsecured loans. We voiced a skepticism that the contemnor, a sophisticated businessman, took no steps to secure the loans and made no meaningful attempts to collect on debts due him. We stated that, "Even more important, however, is the fact that the district court found [contemnor's] explanations unworthy of belief."[8] Accordingly, we held that the district court did not err in finding a failure of proof of the asserted defense.

In the instant action, the bankruptcy court determined that the Trust was part of the estate. That order is final and is not subject to collateral attack in this appeal.[9] Upon the issuance of that judgment, Lawrence came under a continuing

---

[7]Id. at 1241.

[8]Commodity Futures Trading Comm'n, 950 F.2d at 1530.

[9]Maggio v. Zeitz, 333 U.S. 56 (1948).

7

statutory duty to turn the Trust *res* over to the Trustee.[10] Lawrence contends that

the Turn Over Order should be reversed because there was no evidence presented

at the hearing on the turn over motion. This argument is without merit. The

bankruptcy court properly took notice of and considered the evidence placed into

the record in the underlying bankruptcy litigation.[11] The district court did not err in

relying on this underlying action in its determination that the Turn Over Order at

issue was appropriate.

> The district court found that:

> The primary support for the finding that appellant had the present
> ability to comply with the Turn Over Order is found in the Trust
> Indenture itself. The Trust Indenture establishes that the appellant had
> the power and authority to exercise substantial control over the Trust
> at the time of the Turn Over Order.

The district court recognized that the Deed of Appointment for the Trust

specifically reserves to the Settlor (Lawrence) the right to appoint future Trustees.

This power was not affected by the subsequent Declaration that Lawrence was an

excluded person under the Trust. In addition, the 1995 Declaration that Lawrence

was an excluded person did not state whether that exclusion was revocable or

---

[10]11 U.S.C. § 521(4).

[11]State of Florida, Board of Trustees of the Internal Improvement Trust Fund v. Charley Toppino & Sons, Inc., 514 F.2d 700 (5th Cir. 1975).

irrevocable.[12]  The discretion of the Trustees is absolute and unfettered, thus leaving them with the ability to later revoke their decision to make Lawrence an excluded person and reinstate him as a beneficiary.  We agree with the district court that, "The import of these clauses and provisions, when read together, is that the appellant, as settlor and prospective beneficiary, retained de facto control over the Trust through his ability to appoint Trustees who could in their absolute discretion reinstate the appellant as a beneficiary and assign the entire proceeds to him."

We also find that the district court did not clearly err when it determined that the 1993 Duress Amendment is void as to current and future creditors under Florida law where the settlor creates a Trust for his own benefit and inserts a spendthrift clause.[13]  The bankruptcy court and the district court both concluded that Lawrence clearly established this Trust for his own benefit and to shelter these assets from an anticipated adverse arbitration judgment.  Further, this provision was specifically designed to prevent permanent revocation of the settlor's powers. Rather, it leaves to the settlor and the Trustees the discretion to determine when an

---

[12]The 1999 Declaration of Intent declaring the status of Lawrence as an excluded person to be irrevocable was, as the district court noted, "nothing more than a smoke screen meant to obfuscate the issues and hide Lawrence's latent control over the Trust."

[13]Fehlhaber v. Fehlhaber, 850 F.2d 1453, 1455 (11th Cir. 1988).

9

event of duress has occurred. The sole purpose of this provision appears to be an aid to the settlor to evade contempt while merely feigning compliance with the court's order. We agree with our colleagues in the Ninth Circuit, and with the district court herein, that validation of such a provision would contravene public policy proscribing a debtor from shielding money placed in a Trust for his or her own benefit and to the prejudice of legitimate creditors. We cannot say that the district court's determination that Lawrence had the ability to comply with the Turn Over Order was clearly erroneous. Absent such a finding, the Turn Over Order may not be deemed inappropriate.

It is undisputed that Lawrence failed to comply with the Turn Over Order. Once it has been shown that a violation of the order has occurred, the burden shifts to the contemnor to demonstrate an impossibility of compliance. As stated above, the record does not support a conclusion that the district court clearly erred in finding that Lawrence has the requisite ability to control the distribution of the Trust.

Lawrence claims that he has done all that he has the power to do by attempting to appoint the Bankruptcy Trustee as the new Trustee. He insists that the fact that this attempt was met with silence (presumably due to the duress provision) is beyond his control. This contention is not persuasive for several

reasons. In order to prevail on an impossibility defense, Lawrence must demonstrate that he has made "in good faith all reasonable efforts" to meet the terms of the court order he is attempting to avoid.[14] We agree with the district court that Lawrence's last minute appointment of Goldberg as Trustee does not meet the requirement of "all reasonable efforts," nor do any of Lawrence's actions appear to have been made in "good faith." He had to be aware that his attempted appointment would be ignored by the Trustees under the duress clause. Further, the district court found that his testimony that he retained no control over the Trust and that he had not maintained communication with the Trustees lacked credibility. There is no support in the record before us to warrant a rejection of that credibility determination.

Even if we were to find that Lawrence had set forth sufficient evidence of impossibility, we must agree with the trial court that Lawrence's claimed defense is invalid because the asserted impossibility was self-created. We previously have held that, "where the person charged with contempt is responsible for the inability to comply, impossibility is not a defense to the contempt proceedings."[15] Lawrence insists that his impossibility is distinguishable from other cases finding

---

[14]United States v. Roberts, 858 F.2d 698, 701 (11th Cir. 1988).

[15]Pesaplastic, C.A. v. Cincinnati Milacron Co., 799 F.2d 1510, 1521 (11th Cir. 1986).

11

that self-created impossibility is not a defense because his actions, if any, creating

the impossibility occurred prior to the instant action. This contention clearly lacks

merit. We agree with the district court that Lawrence created this Trust in an

obvious attempt to shelter his funds from an expected adverse arbitration award. In

addition, at the time Lawrence became an excluded person under the Trust he

retained the ability to appoint a new Trustee who would have the power to revoke

the excluded person status at any time. We, perforce, must conclude that the

district court did not err in holding that Lawrence failed to establish his defense of

impossibility.

As we affirm the challenged orders, we are constrained to remind the district

and bankruptcy courts that civil contempt sanctions are intended to coerce

compliance with a court order.[16] In Wellington we acknowledged that, "[W]hen

civil contempt sanctions lose their coercive effect, they become punitive and

violate the contemnor's due process rights."[17] The district court must make an

individual determination in each case whether there is a realistic possibility that the

contemnor will comply with the order. We are mindful that, "although

---

[16]Commodity Futures Trading Comm'n v. Wellington Precious Metals, Inc., 950 F.2d 1525, 1530 (11th Cir. 1992).

[17]Id.

incarceration for civil contempt may continue indefinitely, it cannot last forever."[18]

Lawrence has not specifically requested the district court to review whether his continued incarceration has lost its coercive effect. This issue, however, should be considered under the context of his claim of impossibility. If the bankruptcy judge determines that, although Lawrence has the ability to turn over the Trust *res*, he will steadfastly refuse to do so, the judge will be obligated to release Lawrence because the subject incarceration would no longer serve the civil purpose of coercion.

For the reasons assigned, the judgment appealed is AFFIRMED. We instruct the bankruptcy court to reconsider Lawrence's incarceration at reasonable intervals in order to assure that the contempt sanction continues to serve, and is limited to, its stated purpose of coercion.

---

[18]United States v. O.C. Jenkins, 760 F.2d 736, 740 (7th Cir. 1985) (Contemnor in that case was imprisoned for 15 months at the time of that opinion. The court stated: "If after many months, or perhaps even several years, the district judge becomes convinced that, although Thom is able to pay he will steadfastly refuse to yield to the coercion of incarceration, the judge would be obligated to release Thom since incarceration would no longer serve the purpose of the civil contempt order—coercing payment." The court then ordered the district court to reconsider his incarceration at "reasonable intervals.").