**SECURITIES AND EXCHANGE COMMISSION, Plaintiff,**

v.

**Donna YUN, Jerry Burch, Defendants.**

**No. 6:99–CV–117–ORL–22A.**

United States District Court,
M.D. Florida,
Orlando Division.

June 20, 2002.

Mark Kreitman, Securities and Exchange Commission, Washington, DC, J. Kevin Edmundson, Securities & Exchange Commission, Fort Worth, TX, Christina K. McGlosson, Larcy P. Ellsworth, Securities & Exchange Commission, Washington, DC, for plaintiff.

Morris Weinberg, Jr., Laura L. Vaughan, Zuckerman Spaeder L.L.P., Tampa, FL, Michael J. Barta, J. Bradley Bennett, Baker Botts LLP, Washington, DC, for Donna Yun, defendant.

Carl Francis Schoeppl, Schoeppl & Burke, P.A., Boca Raton, FL, Norma Shepard Lindsey, Law Office of Norma Shepard Lindsey, Miami, FL, for Jerry Burch, defendant.

## AMENDED MEMORANDUM AND ORDER

ANN ALDRICH, District Judge.

Defendant Donna Yun has filed a motion to stay this Court's July 24, 2001 judgment pending appeal. Specifically, Yun seeks a stay conditioned upon her: (a) posting a supersedeas bond in the amount of $40,000, and (b) refraining from transferring, selling, or reducing the value of any interest that she has in (1) her retirement annuity, (2) the home in which she resides, and (3) any personal property with a value exceeding $2,500. In opposition, the plaintiff, the Securities and Exchange Commission (SEC) moved the Court to hold Yun in civil contempt for her failure to pay any portion of the judgment against her, or to post a supersedeas bond pending the result of her appeal to the Eleventh Circuit. The Court held a contempt hearing on January 18, 2002. For the following reasons, this Court now denies Yun's motion and holds her in civil contempt.

## BACKGROUND

On December 14, 2000, a jury found Donna Yun and her co-defendant, Jerry Burch, liable for fraudulent insider trading. On July 24, 2001, this Court issued its Final Amended Judgment, in which it ordered that the defendants disgorge $269,000 plus pre-judgment interest within ten days.[1] In addition, the Court ordered that each defendant pay a $100,000 civil penalty. Yun has appealed this Court's judgment, but, to date, she has not secured any supersedeas bond for any amount of the judgment against her.

## DISCUSSION

### SUPERSEDEAS BOND

The Court, by its order of July 24, 2001, specifically required Yun to pay the judgment against her. Yun is entitled to a stay pending appeal, provided that she supply a full supersedeas bond. Fed. R.Civ.P. 62(d). Yun now seeks relief from her duty to secure a full supersedeas bond. This Court declines to provide such relief.

 The usual requirement is that a party seeking a stay pending appeal post a full security supersedeas bond. Departure from this rule will be made only in "extraordinary circumstances," where the moving party "objectively demonstrate[s] the reasons for such a departure."[2] *Poplar Grove Planting & Ref. Co. v. Bache Halsey Stuart, Inc.*, 600 F.2d 1189, 1191 (5th Cir.1979); *Ryan v. Asbestos Workers Union Local 42 Pension Fund*, 2002 WL

---

1. The defendants were found to be jointly and severally liable for the entire judgment. Burch, however, is wholly unable to pay any portion of the judgment. Thus, Yun is responsible for the entire disgorgement judgment. Although Yun continues to argue that she did not receive any financial benefit from the insider trading, *See* Yun Mem. at 1, the Court finds this nothing more than a prohibited attempt to relitigate the merits. *See United States v. Rylander*, 460 U.S. 752, 756, 103 S.Ct. 1548, 75 L.Ed.2d 521 (1983) ("It would

be a disservice to the law if we were to depart from the long-standing rule that a contempt proceeding does not open to reconsideration the legal or factual basis of the order alleged to have been disobeyed...." (quoting *Maggio v. Zeitz*, 333 U.S. 56, 69, 68 S.Ct. 401, 92 L.Ed. 476 (1948))).

2. As a preliminary matter, the Court notes that such a departure should have been sought by way of a motion within ten days of the entry of judgment. Fed.R.Civ.P. 59(e).

87470, at *1 (Jan. 22, 2002) (citing *United States v. Kurtz,* 528 F.Supp. 1113, 1115–16 (E.D.Pa.1981)). Yun has not presented any adequate reason for such a reduction, and it is clear to the Court that Yun has sufficient assets to satisfy the judgment against her.[3]

Yun has not demonstrated that providing a full supersedeas bond would be impossible or impractical. Yun's net worth at the time of the jury verdict was approximately $3.6 million.[4] Three weeks after the jury verdict, Yun had at least a net worth of $1,247,060, including $76,045 cash on hand. Yun Mem. at 13.[5] On July 24, this Court issued its Final Amended Judgment against Yun. Pursuant to the Court order, Yun had ten days to pay the judgment against her. Although Yun was prepared "to obtain a supersedeas bond ... in the amount of $453,185" on July 16, 2001, Yun Ex. F,[6] and was in possession of "$535,000 ... to use as security for a $500,000 bond" on July 31, 2001, Yun Mem. at 8, she obtained no bond, for any value, to secure the July 24, 2001 judg-

ment against her. As of October 1, 2001, more than two months after this Court's Final Judgment, Yun still had a net worth of $302,728 (not including the appraised value of her home), including $66,087 cash on hand and $72,000 worth of jewelry. Contempt Hrg.Tr. at 144; Yun Dep. at 15.

■■■ In addition, Yun owns three separate annuity contracts, valued at approximately $315,663 on January 1, 2001 (SEC Ex. G). Although these annuities are immune from process under Florida law, Fla. Stats. § 222.14, this is not a Florida state court, and, as such, it is not bound by Florida law. *Badgley v. Santacroce,* 800 F.2d 33 (2d Cir.1986), *cert denied,* 479 U.S. 1067, 107 S.Ct. 955, 93 L.Ed.2d 1003 (1987) (The Supremacy Clause of the Constitution prohibits state law from setting up a bar to enforcement of a federal judgment). Although a district court may choose to be guided by state statutes exempting certain property from judgment collection efforts, "[t]he district court has broad discretion in fashioning the equitable remedy of a dis-

To make a motion to reduce bond a full five months after judgment, after five long months spent dissipating Yun's assets, is disingenuous at best.

3. *Arguendo,* even if Yun could not pay the complete judgment, she would nevertheless be required to pay what she could. *SEC v. Musella,* 818 F.Supp. 600, 602 (S.D.N.Y. 1993).

4. Yun admitted that soon after the jury verdict, she "still retained sufficient liquid assets to pay the Judgment in full."

5. In addition, there is significant evidence that this figure is a gross underestimation of her actual net worth at the time.

6. Yun's counsel, Robert Hearn, wrote to the SEC on July 16, 2002 that:

Mrs. Yun is preparing to obtain a supersedeas bond that she intends to file in order to stay enforcement of the judgment entered in the referenced case pending appeal. ... [T]he total amount of the judgment against Mrs. Yun as I have calculatd it, and assuming that Mr. Burch pays nothing, is $437,861 ($269,000 disgorgement + $68,861 prejudgment interest + $100,000 penalty). With respect to the amount of the supersedeas bond, Mrs. Yun intends to post a bond in the amount of $453,185. That amount was determined by taking the amount of the total judgment as computed above and adding one year of post-judgment interest to it ($15,325) ... [T]he purpose of providing this information to you is to resolve any objections that the SEC may have to the amount of the supersedeas bond that Mrs. Yun intends to post before it is submitted to the Court.

gorgement order." *SEC v. Huffman*, 996 F.2d 800, 803 (5th Cir.1993). If this Court were forced to choose among Yun's assets, it might, guided by Florida state law, choose other property over her annuity contracts. But such is not the case here. This Court, in its discretion, will not be guided by state law where its effect is to make a liable party judgment proof. Therefore, this Court finds that Yun must rely on her annuity contracts should that be necessary to post a full supersedeas bond.[7]

Further, Yun could have easily borrowed the funds necessary to secure a full supersedeas bond.[8] Yun has tremendous borrowing potential and was able to borrow money with which to collateralize a bond. As Yun stated at her contempt hearing, she could have secured a supersedeas bond simply by posting her vast assets as collateral and thereby acquiring an irrevocable letter of credit from a bank. Contempt Hrg.Tr. at 158. With her stock portfolio or any of her other substantial assets,[9] Yun certainly could borrow against her assets to obtain a full supersedeas bond.

 The purpose of a supersedeas bond is to secure "the prevailing party against any loss sustained as a result of being forced to forgo execution on a judgment during the course of an ineffectual appeal." *Poplar Grove*, 600 F.2d at 1191. Only a full supersedeas bond would secure the SEC against loss sustained during the course of Yun's appeal to the Eleventh Circuit. While the moving party may obtain a reduction of bond where she "presents to the court a financially secure plan for maintaining the same degree of solvency during the period of the appeal," it is clear from Yun's zealous efforts to exhaust her assets (discussed in detail below) that, while Yun has a present financial ability to pay the judgment against her, that ability might not last long. *See Federal Prescription Serv., Inc. v. Am. Pharm. Ass'n*, 636 F.2d 755, 760 (D.C.Cir.1980) (noting that "a full supersedeas bond should be the requirement in normal circumstance, such as where there is some reasonable likelihood of the judgment debtor's inability or unwillingness to satisfy the judgment in full upon ultimate disposition of the case"). The conditions which Yun now seeks for a stay of this Court's judgment seem quite absurd. She must pay a judgment of half of a million dollars. She can pay a judgment of half of a million dollars. Yet she seeks to obviate her duty simply by giving up a $40,000 bond—less than one-tenth of what she must secure on the judgment against her. Yun Letter of Oct. 4, 2001; Contempt Hrg.Tr. at 4.

To do as this Court's order required, Yun would have to pay the judgment in

---

Yun Ex. F. The Court construes counsel's letter as a judicial admission.

**7.** The SEC asks that this same reasoning extend to the Yun home. The Court disagrees. Yun owns her home with her husband as a tenant by the entirety. Under Florida state law, one spouse cannot alienate or encumber the estate without the consent of the other. *Sitomer v. Orlan*, 660 So.2d 1111, 1113 (Fla. Dist.Ct.App.1995). Thus, as distinguished from Yun's individual annuities, Yun does not truly own her home or have the sole power to

encumber it. The Court declines to force Yun to disgorge her home.

**8.** The Court finds that Yun could have borrowed against her house, her stock portfolio, her home equity line, her jewelry collection, her retirement annuity, or any combination of these or other assets.

**9.** At a minimum, Yun owns seventy-two thousand dollars worth of jewelry and twenty thousand dollars worth of furniture. Contempt Hrg.Tr. at 136.

full, or, in the alternative, secure a full supersedeas bond.[10] However, as the SEC properly notes, "[s]he simply chose not to."

## CONTEMPT

Despite her ability to pay the judgment against her or to secure a full supersedeas bond pending appeal, Yun has yet to act in the last six months to comply with this Court's July 24, 2001 order. In fact, there is substantial evidence that Yun never even made a genuine effort to try to secure a bond for any amount. The SEC argues that Yun's conduct places her in contempt of this Court's order. The Court agrees.

■ The party seeking a finding of contempt must show, by clear and convincing evidence, that a court order required certain conduct and that the party facing contempt did not comply with that order. *Citronelle–Mobile Gathering, Inc. v. Watkins*, 943 F.2d 1297, 1301 (11th Cir.1991); *Petroleos Mexicanos v. Crawford Enters., Inc.*, 826 F.2d 392, 401 (5th Cir.1987). Intent in failing to comply with the order is irrelevant. *Blevins Popcorn Co.*, 659 F.2d at 1184 (failure to comply with the Court's order need not be willful or intentional for a finding of contempt). The SEC has presented sufficient evidence of Yun's acknowledged failure to comply with this

Court's order of July 24, 2001. The Court finds this evidence clear and convincing.

■ To avoid contempt for failure to pay a judgment or secure a full supersedeas bond, the alleged contemnor must prove that (1) it was impossible to pay all, or any part, of the judgment, *United States v. Rylander*, 460 U.S. 752, 757, 103 S.Ct. 1548, 75 L.Ed.2d 521 (1983);[11] (2) this impossibility was not "self-induced," *In re Power Recovery Sys., Inc.*, 950 F.2d 798, 803 (1st Cir.1991); and (3) "in good faith all reasonable efforts" to secure payment were made. *Commodity Futures Trading Comm'n v. Wellington Precious Metals, Inc.*, 950 F.2d 1525, 1529 (11th Cir.1992), *cert. denied*, 506 U.S. 819, 113 S.Ct. 66, 121 L.Ed.2d 33 (1992); *Chairs v. Burgess*, 143 F.3d 1432, 1436 (11th Cir. 1998). As noted above, Yun has not shown that it is impossible for her to comply with this Court's order.[12] Thus the Court need only consider the final two prongs in imposing contempt.

■ Assuming, *arguendo*, that Yun does not have the "present ability" ability to secure a full supersedeas bond, contempt nevertheless would be an appropriate sanction, in that "self-induced inability ... does not meet the test." *Chicago Truck Drivers v. Bhd. Labor Leasing*, 207 F.3d 500, 506 (8th Cir.2000) (citing *In re*

10. The parties agree that a full supersedeas bond, for both the disgorgement and Yun's penalty, would be in the amount of $500,000 at the present time.

11. Yun argues that alleged contemnor's ability to pay should not be assessed at the time of the Court order, but rather at the time of the contempt hearing. The SEC counters that such a rule would be irrational, in that it would allow a contemnor to avoid contempt simply by delaying the contempt hearing. Both are correct. The alleged contemnor's ability to comply is, in fact, assessed at the time of the contempt hearing. *Rylander*, 460

U.S. at 757, 103 S.Ct. 1548. However, the second prong of the alleged contemnor's burden, that impossibility not be self-induced, mitigates the irrationality of the *Rylander* holding by scrutinizing the reasons for the contemnor's present impossibility. *Power Recovery*, 950 F.2d at 803.

12. The Court notes that Yun had the burden of production in raising an impossibility defense. *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir.1988).

*Power Recovery Sys., Inc.,* 950 F.2d 798, 803 (1st Cir.1991)); *S.E.C. v. Ormont Drug & Chem. Co.,* 739 F.2d 654, 657 (D.C.Cir. 1984). Although Yun has made no attempt to pay the judgment or to secure a bond, she has gone to great lengths to avoid doing so, taking deliberate steps to deplete her assets since the entry of this Court's final judgment.[13] Since this Court's July 24, 2001 judgment was entered against her, Yun has spent at least: $124,336 for her lawyers, Contempt Hrg.Tr. at 114–15; $134,626 for stock trades on margin, *Id.* at 113; $12,000 for personal travel expenses, *Id.* at 154–56;[14] $12,500 for her daughter's wedding, *Id.* at 139;[15] $25,000 for remodeling of her kitchen, *Id.* at 123; Yun Dep. at 132–33; and tens of thousands of dollars for clothing, and jewelry, Yun Dep. at 133.[16] In addition, since July, 2001, Yun has withdrawn at least $560,000 from her Charles Schwab securities account, SEC Ex. 1; Contempt Hrg.Tr. at 60, and $80,000 from her SunTrust bank account, SEC Ex. 2, and it is still unclear where much of that money went. *See* Contempt Hrg.Tr. 105–07, 110–16, 124–25.[17]

 Further, Yun has not shown good faith efforts to attempt to comply with this

---

**13.** Through Yun's own testimony and counsels' argument during the contempt hearing, there was evidence presented that her attorney, Robert Hearn, took an active role in her efforts to avoid the judgment against her. Contempt Hrg.Tr. 93–104, 128–29; Yun Dep. at 18.

Mr. Hearn: Uh, there's no allegation in this case, and there's been no testimony on the record that Mrs. Yun is trying to hide the money she spent. It's just that she—

The Court: But there really is—wait a minute. I would like to know what evidence you have that she actually made any effort to go ahead and get a supersedeas bond.

Mr. Hearn: Uh, you heard the testimony form Mr. Hatcher.

The Court: I heard his testimony, and I—and I did read the testimony from Mrs. Yun in her deposition with respect to she met somebody to talk about it briefly and then didn't follow up on it.

Mr. Hearn: Well, I'm not sure what to do about this point, Your Honor, in that *I was, you know, greatly responsible for her efforts in that regard.* And I can proffer to you what I did. Uh, I'm not sure—

Mr. Kreitman: Your Honor, if Mr. Hearn is going to be a fact witness, we want him on the stand, we want to cross-examine him.

\*\*\*

Mr. Kreitman: Your—Your Honor, this is really descending into farce. Here's a woman who asserts attorney/client privilege with respect to any efforts that she made to get a bond, and now she wants her lawyer to proffer about it.

Contempt Hrg.Tr. at 93–94 (emphasis added). Although attorney-client privilege kept much of this evidence from the Court, the Court cannot overlook the cloud of impropriety that hangs over the actions of Mr. Hearn. Nevertheless, the Court declines at this point to sanction Mr. Hearn for any role he may have had in Yun's contempt. *See Chicago Truck Drivers,* 207 F.3d at 507 (quoting *Alemite Mfg. Corp. v. Staff,* 42 F.2d 832, 833 (2d Cir.1930) (noting that a non-party "may be punished if he either abet[s] the defendant or [is] legally identified with him")).

**14.** The Court notes that, since the issuance of its July 24, 2001 order, Yun has traveled to Nevada, Massachusetts, California (twice), and Asia. Contempt Hrg.Tr. at 154–56.

**15.** Although she has only spent $12,500 thus far on her daughter's wedding, she has obligated herself to spend an additional $66,500 for the June 22, 2002 wedding. Contempt Hrg.Tr. at 139.

**16.** Yun depleted much larger sums both during and after the trial, when clearly a substantial judgment against her was imminent, but such expenditures, although telling of her attitude toward the authority of this Court, are not relevant to the present inquiry.

**17.** Although Yun has emptied her accounts several times, David Yun, Yun's husband, has made periodic deposits into her checking account each time she has run out of money. Contempt Hrg.Tr. at 165–66; Contempt Hrg. Ex. 2, 3. In examining the ups and downs of Yun's checking account, the Court finds the series of Mr. Yun's deposits and Mrs. Yun's

Court's order. *Commodity Futures Trading Comm'n v. Wellington Precious Metals, Inc.*, 950 F.2d 1525, 1529 (11th Cir. 1992), *cert. denied,* 506 U.S. 819, 113 S.Ct. 66, 121 L.Ed.2d 33 (1992); *Chairs,* 143 F.3d at 1436. Yun has not shown good faith substantial compliance with this Court's order.[18] *Food Lion, Inc. v. United Food & Commercial Workers Int'l Union,* 103 F.3d 1007, 1016 (D.C.Cir.1997). To show good faith, Yun must do more than simply assert her inability. *United States v. Hayes,* 722 F.2d 723, 725 (11th Cir. 1984). Good faith requires that "all reasonable efforts" be made. *Combs,* 785 F.2d at 984 ("Even if the efforts he did make were 'substantial,' 'diligent' or 'in good faith,' ... the fact that he did not make 'all reasonable efforts' establishes that [defendant] did not sufficiently rebut the ... prima facie showing of contempt." (quoting *Hayes,* 722 F.2d at 725)). Yun made only a single half-hearted attempt to obtain an unsecured bond.[19] Yun testified at the contempt hearing[20] that, after this single attempt, she came to the decision that she would never be able to get a bond, Contempt Hrg.Tr. at 169, and that, through non-payment and negotiation, the SEC would eventually settle the judgment against her.[21] Contempt Hrg.Tr. at 124, 126. In effect, she gave up before she even tried. The Court does not share Yun's defeatist attitudes. And the Court cannot possibly find from this that Yun made *all* reasonable efforts to comply with this Court's July 24, 2001 order.

Contempt is an appropriate sanction for Yun's failure to secure any supersedeas bond.[22] The Court has unambiguous authority to enforce its orders through the remedy of civil contempt. *Shillitani v. United States,* 384 U.S. 364, 370, 86 S.Ct. 1531, 16 L.Ed.2d 622 (1966); *United States v. Barnette,* 129 F.3d 1179, 1182 n. 7 (11th Cir.1997). The Court may coerce a defen-

---

withdrawals to be nothing more than a thinly veiled attempt to allow Yun to insist that she has no money to pay this Court's judgment while continuing to live a life of leisure and overindulgence.

18. Yun was aware that she could make a partial payment of the Court's judgment. Contempt Hrg.Tr. at 126–27.

19. Marion Hatcher, Senior Vice–President of J. Ralph Davis Insurance Agency, testified that although David Yun, Yun's husband, inquired with him about obtaining a bond, the Yuns never completed all the paperwork necessary to obtain the bond. Contempt Hrg.Tr. at 28–32. So, in reality, Yun failed even to make this single attempt to obtain a bond.

20. The Court notes that although Yun had the burden to present evidence that she made all reasonable efforts to meet the terms of this Court's order, she presented no witnesses at the contempt hearing other than herself. In assessing Yun's own testimony at the contempt hearing, the Court found Yun largely without credibility, based on her argumenta-

tive demeanor with counsel and the Court, her pattern of answering questions with other questions, and her conveniently selective memory. The Court found Yun's demeanor at the hearing ironically contemptuous in light of the threat of imprisonment facing her.

21. Although Yun's counsel made several settlement offers to the SEC, *see* Yun Ex. H, I, K, L, it is clear—both from settlement amount offered and the SEC's lack of response—that these offers were not being taken seriously by the SEC, and, that no real settlement negotiations were underway.

22. The Court recognizes that its contempt authority is limited to sanctioning only Yun's failure to pay the disgorgement portion of the judgment against her. Yun's additional failure to pay the penalty portion of this Court's judgment is governed by the Federal Debt Collection Procedure Act, which precludes a person owing a penalty to the United States from being held in contempt. 28 U.S.C. § 3002(3)(B).

dant into compliance with a court order by either fine or imprisonment. 18 U.S.C. § 401.

■■■■ The Court finds that imprisonment is a proper sanction for Yun's contempt of this Court's order.[23] *CFTC v. Wellington Precious Metals, Inc.,* 950 F.2d 1525 (11th Cir.1992), *cert. denied,* 506 U.S. 819, 113 S.Ct. 66, 121 L.Ed.2d 33 (1992). However, the Court, rather than imposing this sanction immediately, may issue a conditional order, permitting Yun to avoid sanctions by prompt compliance. *Hicks v. Feiock,* 485 U.S. 624, 632–35, 108 S.Ct. 1423, 99 L.Ed.2d 721 (1988); *SEC v. Current Financial Services, Inc.,* 798 F.Supp. 802, 806 (D.D.C.1992). In the present case, although Yun is in contempt, this Court will not order that she be taken into custody if she purges herself of her contempt by complying with this Court's earlier order to secure a full supersedeas bond. *NLRB v. Blevins Popcorn Co.,* 659 F.2d 1173, 1184 (D.C.Cir.1981). It is that simple.

■■■■ "Embedded in Anglo–American law is the inherent power of the judiciary to coerce obedience to its orders by summarily holding a recalcitrant person . . . in civil contempt, and then imprisoning him until he complies." *In re Grand Jury Investigation (Braun),* 600 F.2d 420, 422 (3d Cir.1979). Without the power to punish noncompliance with its orders, this Court's authority to issue judgments would be nothing more than "a mere mockery." *United States v. United Mine Workers,* 330 U.S. 258, 290 n. 56, 67 S.Ct. 677, 91 L.Ed. 884 (1947). Through her months of deception, Yun has taken deliberate strides to make a mockery of the jury verdict against her and the judgment of this Court. Yun has flouted the authority of this Court for far too long. It ends here.

## CONCLUSION

For the foregoing reasons, the Court denies Yun's motion for a stay unless she secures a full supersedeas bond within ten (10) days of the issuance of this order. The Court further orders, should Yun not pay the disgorgement portion of the judgment against her or secure a bond for that amount within ten (10) days of the issuance of this order, that she be taken into custody and incarcerated until such time as she fully complies with this Court's order or unless the Eleventh Circuit reverses the jury's verdict in this matter.

IT IS SO ORDERED.

---

**23.** Yun notes that, "in enforcing an order through contempt, a district court is obliged to use the 'least possible power adequate to the end proposed.'" (quoting *Spallone v. United States,* 493 U.S. 265, 276, 110 S.Ct. 625, 107 L.Ed.2d 644 (1990)). Incarceration is this Court's "least possible power." In light of Yun's alleged financial difficulties, this Court finds incarceration, rather than the imposition of an excessive fine, to be the least coercive sanction necessary to encourage Yun's compliance with this Court's order.